**AIRLINE COMMERCE BANK,**
Appellant,

v.

Earl W. WILBURN, Jr., et al, Appellees.

No. A2412.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Nov. 12, 1980.

Rehearing Denied Dec. 17, 1980.

Michael Dorman, Liddell, Sapp, Zivley, Brown & LaBoon, Houston, for appellant.

Maurice L. Bresenhan, Jr., Bresenhan, Martin & Wingate, Ross A. Sears and John H. Nichols, Bruce L. James, Saccomanno, Clegg, Martin & Kipple, Houston, for appellees.

Before J. CURTISS BROWN, C. J., and COULSON and JUNELL, JJ.

JUNELL, Justice.

Appellant Airline Commerce Bank (Bank) brought suit on a promissory note executed by appellees, Earl W. Wilburn, Jr., Truett Peachey, and Jake B. Clegg, Jr. The note proceeds were deposited to a North Central General Hospital bank account in appellant Bank and were used to pay hospital operating expenses. Trial to the Court resulted in a take nothing judgment in favor of appellees, the Court finding that actions taken by appellant in the attempted collection of the note resulted in a discharge of appellees' liability on the note. Appellant contends its actions were the result of mistake, thereby entitling them to equitable relief. We disagree and affirm the judgment of the trial court.

On October 23, 1974, Wilburn, Peachey and Clegg met with Marvin Howard, Chairman of the Board of the Bank to discuss a loan for the purpose of meeting the immediate, short-term financial needs of North Central General Hospital (hospital). The hospital had been experiencing severe financial difficulties for some time and previously had been refused a loan by the Bank. Wilburn and Peachey were part owners in the hospital management company, Mediplex, which had recently been employed to manage the hospital. Also present at the meeting on October 23rd were two employees of the Mediplex management staff. Peachey and Wilburn were attempting to put together a limited partnership to take over ownership of the hospital. For that purpose Peachey had caused a new corporation, Hospital Investors, Inc., to be created. It was to be the general partner, and the stockholders in the corporation which theretofore owned the hospital were to be the limited partners. Peachey was to raise approximately $800,000 in new capital contri-

butions to the proposed limited partnership. Clegg was the attorney for both Mediplex and Hospital Investors, Inc.

A loan of $30,000.00 was approved, but in view of the hospital's financial position, Mr. Howard refused to make the loan directly to the hospital, requiring instead the appellees' individual signatures on the note. It was agreed, however, that the loan would actually be repaid by the hospital. The same day the note was signed the loan proceeds were deposited to the hospital's account in appellant Bank and shortly thereafter used to pay the hospital's payroll. This was the second such loan made for the benefit of and to be repaid by the hospital but signed by an individual. At the time of the meeting on October 23, 1974, payments were being made by the hospital on the former note. The hospital later defaulted, however, and the balance was recovered from the individual maker of that note.

On November 7, 1974, the $30,000.00 note came due, and on November 12, 1974, it was renewed and extended to November 26, 1974. The accrued interest was paid by the hospital at the time of renewal. When the renewal note came due on November 26, 1974, after attempting to telephone Peachey to demand payment, Mr. Howard notified Wilburn that the note was due and that if he could not pay it, Howard would have to charge the hospital's account to satisfy the note. On December 2, 1974, Peachey went to the Bank, apparently to arrange payment of the note, at which time he was given the notes and told they had been paid by charging the hospital's account. Peachey then released a $30,000.00 note which the hospital had executed on November 3, 1974, payable to Hospital Investors, Inc., apparently as security for appellees' liability on the note to the Bank.

Approximately ten days later the hospital's attorney, Martin Nathan, notified Mr. Howard that the Bank had no authority to charge the hospital's account and demanded the money be returned to the account immediately, upon threat of filing suit against the Bank. On December 12, 1974, the funds were recredited to the hospital's account and the note put back on the books of the Bank. The individuals on the note received no notice of the Bank's actions of December 12, 1974, until served with process in this lawsuit, which was after the hospital filed Chapter XI bankruptcy proceedings on January 5, 1975.

Appellees defended the suit alleging the defenses of conditional delivery, discharge by reason of payment and/or surrender of the instrument, statute of limitations, and equitable estoppel. Additionally, appellee Wilburn alleged he had no personal liability on the note for the reason that the word "Trustee" appeared after his signature, establishing his liability in a representative capacity only. With the exception of the estoppel defense, we find no merit to any of appellees' defenses and in the absence of proof of all elements of that defense would reverse and render judgment on the note against all appellees personally.

Equitable estoppel being an affirmative defense, the burden of proving it rests on the party asserting it and requires proof of all elements necessary to constitute it. *Concord Oil Co. v. Alco Oil and Gas Corp.*, 387 S.W.2d 635 (Tex.1965). In order to avoid liability on the note by estoppel, appellees must have established proof in the record of the existence of a false representation or a concealment of material facts; that the representation or concealment was made with knowledge, actual or constructive, of the facts; that the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; that it was made with the intention that it be acted on; and that the party to whom it was made must have relied or acted on it to his prejudice. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929 (1952).

Findings of Fact were made by the Court in support of its Conclusion of Law that the Bank is estopped to recover from appellees on the note. If the record before this Court supports these findings of the elements required by the defense of estoppel, we must affirm the trial court and consideration of appellant's other points on appeal is unnecessary. After a careful review of the rec-

ord, we find there is sufficient evidence in the record to support each of the elements of the defense of equitable estoppel.

Estoppel can arise by silence as well as by words where there exists a duty to speak. *Traylor v. Gray*, 547 S.W.2d 644, (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n. r. e.). The failure of the bank to notify the appellees that the funds had been recredited to the hospital's account and that the bank, therefore, no longer considered the note paid constituted concealment of a material fact. The concealment was made with knowledge of the facts. The appellees were without knowledge of the fact that the note remained unpaid and had no means of knowledge of the real facts other than from the bank. The fourth element, that the concealment be made with the intention that it should be acted upon, is satisfied in the context of estoppel by silence where there is evidence of turpitude or negligence on the part of the party to be estopped. *Id.* The bank owed appellees as obligors on the note, the duty to advise them of the change in the status of the note to "unpaid," after advising them that it was paid. The representation affected appellees' legal obligation on the note. By failing to advise them of the change, the bank breached their duty to appellees, constituting negligence. Appellees relied and were entitled to rely on the bank's representation that the note had been paid.

The final element of estoppel, that of detrimental reliance on the concealed fact, is supported by the evidence on several counts. There is sufficient evidence to support the finding that, had the bank notified the appellees of the charge back, they could have secured authority from the hospital to charge the account or make other payment arrangements prior to instigation of the bankruptcy proceedings. Additionally, once Peachey received the notes understanding them to be paid, he released the note held as security by appellees.

Finding sufficient evidence in the record to support all the necessary elements of the defense of equitable estoppel, we affirm the judgment of the trial court that the Bank is estopped to recover on the note from appellees.

Affirmed.