IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 7, 2009 Session

# IN THE MATTER OF: THE ESTATE OF LUCILLE ANNETTA SCHISLER

**Appeal from the Chancery Court for Lawrence County**
**No. 13861-08     Robert L. Jones, Judge**

---

**No. M2008-02479-COA-R3-CV - Filed October 19, 2009**

---

Two of a deceased mother's six children appeal a jury's specific findings that their mother's last will was invalid because they had a confidential relationship with their mother and unduly influenced her to execute the will. Plaintiffs, the decedent's four other children, commenced this action to contest the will the appellants offered for probate. On appeal, the appellants contend there is no material evidence to support the jury's findings that they had a confidential relationship with their mother or that they exerted undue influence. Appellants also contend the trial court erred by admitting evidence of a criminal conviction of one of the appellants. Whether to admit the evidence was within the sound discretion of the trial court and we find the court did not abuse its discretion by admitting the evidence; moreover, the trial court gave a limiting instruction that evidence of the crime was only relevant as it pertained to motive and intent to influence the testatrix to change her will. As for the jury verdict, we find substantial and material evidence that supports the jury's findings in the record. Accordingly, we affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

W. Charles Doerflinger, Lawrenceburg, Tennessee, for the appellants, Linda Lou Stem and Carroll Lynn Schisler, Sr.

Charles W. Holt, Jr., Ben Boston, and Ryan P. Durham, Lawrenceburg, Tennessee, for the appellees, Iris Edwards Wix, Donald Edward Schisler, Ralph Truman Schisler and August Frederick Schisler.

## OPINION

Lucille Annetta Schisler (hereinafter "Mrs. Schisler") died on August 17, 2006, at the age of 80. She was survived by six children: Carroll, Donnie, Freddie, Iris, Linda, and Ralph. She lived most of her life on a family farm in Carroll County, Maryland. Because of deteriorating health, Mrs.

Schisler relocated to Tennessee in December of 2004 to live with her son, Donnie. In May of 2005, she moved in with her daughter, Linda, who lived in Lawrence County, Tennessee, and she continued to reside with Linda until her death on August 17, 2006.

Prior to moving to Tennessee, Mrs. Schisler lived on a 110-acre family farm in Carroll County, Maryland, which she and her late husband bought in 1958. The farm was the main source of income for Mr. and Mrs. Schisler, and they raised their six children on the farm. Daughter, Iris, left the family home in 1967 and moved to Georgia with her husband. All four boys continued to work the family farm with their father, mother, and sister, Linda, until Donnie moved to Lawrence County, Tennessee in 1972. Thereafter, Ralph began working away from the farm. Mr. Schisler died in 1982. After his death, Mrs. Schisler and two of her sons, Freddie and Carroll, continued to work the farm.[1] In 1983, Linda moved to Lawrence County, Tennessee with her husband.

Mrs. Schisler, Freddie, and Carroll continued to work the farm together until 2001 when a family meeting was called to discuss accusations that Freddie was stealing from the farm. At the conclusion of the family meeting, Freddie left the farm to live in Pennsylvania. After Freddie left, only Mrs. Schisler and Carroll remained to work the farm, and Carroll took charge of all farming operations.

On July 9, 2001, Mrs. Schisler executed a revocable family trust and a will. The family farm was transferred to the trust and became trust property. The beneficiaries of the trust were Mrs. Schisler and five of her children, Carroll, Donnie, Iris, Linda, and Ralph.[2] Mrs. Schisler, however, for as long as she lived, was to be the primary beneficiary of the income from the trust, which consisted primarily of the income from the farming operation.

Pursuant to the trust, Carroll had the exclusive right to operate the family farm, which afforded him significant control over the income to be derived by the trust from the farming operations. The trust further provided that after Carroll's death, or once Carroll ceased to operate the farm, Ralph had the right to operate the farm for life provided he continued to operate the farm. If and when Carroll and Ralph both died or ceased operating the farm, the trust would terminate, in which event the trustees were to distribute the trust assets to the trust beneficiaries – Mrs. Schisler, if she was still living, and the surviving children of Mrs. Schisler (excluding Freddie) or their descendants, *per stirpes*. All other assets belonging to Mrs. Schisler were to pass pursuant to her will, which provided that her estate was to be divided equally among her six children, including Freddie, or the descendants of a deceased child.

---

[1] A joint farm account was set up in 1982 between Carroll, Freddy, and Mrs. Schisler.

[2] Freddie was expressly excluded from the trust. The trust stated in Item 1.5 that Freddie had already received "machinery and other assets" that represented his share of the family farm. Freddie was, however, a residuary beneficiary of the will, but the family farm did not pass pursuant to the will.

In December 2004, Mrs. Schisler left the family farm in Maryland because of her deteriorating health[3] and moved to Tennessee to live with Donnie. Two months later, in February 2005, Mrs. Schisler suffered a mini-stroke. Thereafter, Mrs. Schisler contacted the attorney in Maryland who had drafted her trust and will in 2001. In a letter to the attorney, Mrs. Schisler voiced concerns regarding the trust and whether it was the proper method of insuring that Carroll would be able to farm the land for as long as he desired. Her letter also provided that she still wanted the children, except Freddie, to be able to vote on what to do with the property if Carroll stopped farming the land.

On May 19, 2005, just prior to moving in with her daughter, Linda, Mrs. Schisler traveled with Linda to Maryland to meet with the attorney. Linda, Carroll, and Linda's husband attended the meeting Mrs. Schisler had with her attorney. At the time of this meeting, Mrs. Schisler's estate consisted of the family farm, a one-fifth undivided interest in a parcel of real property in Baltimore County, Maryland (hereinafter "Windsor Mill Road property"), and a six-acre tract also located in Baltimore County (hereinafter "Dogwood property"). After consulting with the attorney, Mrs. Schisler made several amendments to the trust and her will. Notably, she removed the provision that gave Ralph the option to operate the farm. She also changed the designation of her personal representatives in her will by removing Ralph, Donnie, and Iris as her co-executors and appointing Carroll and Linda instead. The family farm and a money market account remained in the trust.

In the interim, tensions were building between Carroll and Ralph concerning the boundary that separated two adjacent tracts of land the two owned. The two tracts, which were previously part of the family farm, had been separately deeded to Carroll and Ralph by Mrs. Schisler in 1999. Mrs. Schisler became aware of the dispute between Carroll and Ralph during a visit by Carroll in August of 2005, when Carroll traveled to Tennessee to see his mother.

On September 1, 2005, while Carroll was visiting Mrs. Schisler at Linda's home in Tennessee, Mrs. Schisler executed deeds conveying the family farm and the Dogwood property to Carroll.[4] The deeds were prepared by Carroll's girlfriend. After the family farm and the Dogwood property were conveyed to Carroll, Mrs. Schisler's modest estate only consisted of a $5,000 money market account, her interest in the Windsor Mill Road property, and some tangible personal property.

In September or October of 2005, Linda and Donnie got into an argument during which Donnie pushed Linda out of his house and told her not to come back. Mrs. Schisler witnessed the incident. Also in October of 2005, Donnie took Mrs. Schisler's money out of a lockbox Donnie and

---

[3] Mrs. Schisler had to be taken to dialysis often, began suffering from various heart problems, and had very poor eyesight.

[4] The deeds to the family farm and Dogwood property executed on September, 1, 2005, from Mrs. Schisler to Carroll are the subject matter of an undue influence lawsuit pending in Maryland. Carroll sold the Dogwood property on February 20, 2006, for $85,000; he retained ownership of the farm in Maryland, which had an estimated value of approximately $195,670.

his wife shared with Mrs. Schisler. Mrs. Schisler became upset when she learned that Donnie had taken the money. When she requested that he return the money to her, he promptly complied.

In November 2005, Mrs. Schisler and Linda went to meet with a lawyer in Lawrenceburg, Tennessee to change her will and revoke the *inter vivos* revocable trust. During the meeting, she informed her attorney, *inter alia*, that she shared a joint checking account with Carroll that she intended for him to have.[5]

On November 15, 2005, Mrs. Schisler and Linda returned to the lawyer's office at which time Mrs. Schisler revoked the trust, the only remaining asset of which was the money market account, and executed a will that revoked her prior wills. Mrs. Schisler also executed a Durable Power of Attorney on November 15, 2005, designating Carroll and Linda as co-attorneys-in-fact, and a Health Care Power of Attorney, in which she designated Linda as primary agent and Carroll as the alternate agent. Mrs. Schisler also purchased a certificate of deposit in Linda's name on November 15, 2005.[6]

The November 15, 2005 will contained a specific bequest of her one-fifth interest in the Windsor Mill Road property to her six children. The will, however, differed from the previous two wills in that no other property was specifically bequeathed to anyone, and the residuary estate, meaning everything but the Windsor Mill Road property, was bequeathed only to Carroll and Linda.

Following Mrs. Schisler's death, Carroll and Linda filed a petition to admit the November 15, 2005 will to probate in common form. The will was admitted to probate in common form on October 31, 2006. Four days later, on November 3, 2006, Carroll and Linda submitted a petition to probate the will in solemn form. On December 4, 2006, Mrs. Schisler's other four children, Donnie, Iris, Ralph, and Freddie, filed a Complaint in the Probate Court of Lawrence County to contest the November 15, 2005 will alleging that Carroll and Linda each had a confidential relationship with their mother and that they exercised undue influence to cause her to execute the November 15, 2005 will.

Prior to commencement of the jury trial concerning the validity of the November 15 will, Carroll filed a motion in limine to prevent Plaintiffs from presenting evidence concerning Carroll's conviction for actions concerning the manner in which Carroll operated the family farm in Maryland and how he treated the farm animals, specifically aggravated cruelty to animals, abuse or neglect of animals, feeding garbage to swine, adulterating or misbranding food, selling adulterated or misbranded food, discharging pollutants into water, and unlawfully disposing of over 500 pounds of litter. The trial court heard arguments pertaining to the motion out of the presence of the jury. Counsel for Carroll argued that the conviction was irrelevant and any probative value that could be

---

[5] This joint checking account had formerly been used as the farm account set up in 1982. Carroll also deposited Mrs. Schisler's social security checks into this joint checking account.

[6] By November 17, 2006, the estimated value of the CD was $10,341.22.

derived from the admission of Carroll's conviction was substantially outweighed by the prejudicial effect it would have on the jury. Plaintiffs, on the other hand, argued that the convictions went to Carroll's motive and intent to exercise undue influence over Mrs. Schisler, noting that due to his convictions regarding farm animals, he could not operate the farm in Maryland if animals were on it. The trial court denied the motion, but reserved the right to give limiting instructions to the jury concerning the limited relevance of the convictions. Thereafter, the case proceeded to a trial by jury.

During the cross examination of Carroll, counsel for Plaintiffs sought to admit into evidence a record of Carroll's conviction. Although he did not make a formal objection to the admissibility of the conviction, counsel for Carroll expressed some concern with the admission of the conviction because Carroll still had time to appeal the conviction. The trial court admitted the conviction into evidence, but instructed the jury that the conviction could only be considered to determine the credibility of Carroll, not the validity of the November 15, 2005 will.

At the conclusion of a four-day trial, the jury provided answers to seven interrogatories. The answers to the four most relevant interrogatories are as follows:

3. Do you find that Carroll Schisler, Sr. had a confidential relationship with Lucille Annetta Schisler at the time of the execution of the November 15, 2005 Will?

Yes ___X___
No _____

4. Do you find that the November 15, 2005 Will is invalid because it was obtained through the undue influence of Carroll Schisler, Sr.?

Yes, invalid ___X___
No, valid _____

5. Do you find that Linda Stem had a confidential relationship with Lucille Annetta Schisler at the time of the execution of the November 15, 2005 Will?

Yes ___X___
No _____

6. Do you find that the November 15, 2005 Will is invalid because it was obtained through the undue influence of Linda Stem?

Yes, invalid ___X___
No, valid _____

Carroll and Linda filed a Motion for a New Trial on June 19, 2008, asserting that the trial court erred in admitting evidence concerning Carroll's convictions. They also argued that the verdict was contrary to the weight of the evidence, specifically that there was no material evidence to support a finding that the November 15, 2005 will was obtained through the undue influence of Carroll or Linda, nor was there evidence of a confidential relationship with their mother, which would give rise to a presumption of undue influence. Plaintiffs filed a Motion for Discretionary Costs. Both motions were argued before the trial court after which the trial court denied the Motion for a New Trial and awarded Plaintiffs' their discretionary costs, except for the requested travel expenses, which were denied. This appeal by Carroll Schisler and Linda Stem followed.

### ANALYSIS

Appellants present two principal issues on appeal: whether the trial court erred in admitting evidence pertaining to Carroll's criminal conviction, and whether there is material evidence to support the jury's finding that the November 15, 2005 will was invalid because it was obtained through undue influence of Carroll Schisler and Linda Stem.

### EVIDENTIARY RULINGS

Appellants allege that the trial court erred in denying their pre-trial motion to exclude the criminal conviction of Carroll Schisler, and that it further erred in admitting the appellate record wherein his conviction was affirmed. A decision whether to admit or exclude evidence lies within the discretion of the trial court. *See Young v. Hartley*, 152 S.W.3d 490 (Tenn. Ct. App. 2004) (citing *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001)) ("Trial courts are accorded a wide degree of latitude in their determination of whether to admit or exclude evidence, even if such evidence would be relevant."). Thus, this court reviews such decisions under an abuse of discretion standard, which provides that

> a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

Appellants argued at trial that Carroll's convictions were irrelevant and that the admission of such evidence was highly prejudicial. Pursuant to Tennessee Rule of Evidence 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Although normally admissible, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury." Tenn. R. Evid. 403. "The admissibility of evidence under Rule 403 of the Tennessee Rules of Evidence is a matter within the trial court's discretion and will not be reversed on appeal absent an abuse of that discretion." *State v. Biggs*, 218 S.W.3d 643, 667 (Tenn. Crim. App. 2006) (citing *State v. Dubose*, 953 S.W.2d 649, 652 (Tenn. 1997)).

Evidence of "crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes." Tenn. R. Evid. 404(b). For example, such evidence may be relevant to show motive or intent. Tenn. R. Evid. 404(b), Advisory Comm'n Commt. Before the trial court may permit evidence of a prior crime, wrong, or act, the following procedures must be met:

> (1) The court upon request must hold a hearing outside the jury's presence;
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record, the material issue, the ruling, and the reasons for admitting the evidence;
> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
> (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). Assuming these procedures are substantially followed, the trial court's decision concerning the admissibility of the contested evidence is afforded great deference and will only be reversed if the trial court abused its discretion. *State v. Dubose*, 953 S.W.2d at 652.

We have determined the trial court substantially followed the above procedures. Specifically, the jury was not present during the hearing on the motion in limine. The fact that Carroll was convicted of the crimes was not disputed, only the finality was discussed. The trial court made a specific finding to explain why the evidence was admissible and the limited purpose for which the jury could consider the evidence, that being motive and intent to influence his mother to make a new will and revoke her previous wills. In balancing the probative value and the prejudicial effect, the trial court stated:

> I certainly find that it's relevant. I certainly see a danger for unfair prejudice. But it sounds like, at least, from [t]he Court's exposure to it thus far, that it may be highly probative on what was happening in 2005 with regard to deeds, wills, revocation of trust, and other actions on behalf of the decedent in this case.

At trial, counsel for Carroll was the first to question Carroll concerning his convictions and his operation of the family farm. This was done during the direct examination of Carroll. On cross-examination, Plaintiff's counsel introduced the Opinion of the Court of Special Appeals of Maryland that affirmed his convictions. The following is an excerpt of the dialogue among counsel and the court that ensued:

| | |
|---|---|
| Mr. Holt: | I would like to make this from the Maryland Special Appeals the next exhibit, Your Honor. |
| The Court: | Any objection? |
| Mr. Doerflinger: | My understanding, in Maryland it's not an enrolled opinion yet. There's possibility of taking a certiorari. |
| The Court: | I'm going to mark it, but let me tell the ladies and gentlemen of the jury, usually prior convictions in a case like this is relevant only if it goes to the credibility of the witness. In Tennessee law, if it was for theft or fraud or other types of dishonesty, it would clearly go to credibility because . . . dishonest people might lie. Disputes over environmental and animal management issues might not go to credibility. . . . |
| Mr. Holt: | There is one count of misbranding or mislabeling food, Your honor. |
| Mr. Doerflinger: | But there's no– |
| The Court: | I'm also concerned there is not a final conviction. This will be marked and admitted as Exhibit 36. In other words, if it has any relevance at all in this case, it can only go to this witness's credibility and not influence directly the validity or invalidity of the November, 2005, will. |

The trial court ruled that Carroll's conviction was admissible because it was relevant to whether Carroll had a motive or intent to influence his mother.[7] As the trial court explained, any evidence of Carroll's motive in asserting undue influence "would at least be circumstantial evidence of specific intent . . . [and] anything that may be direct or circumstantial evidence of Carroll Schisler's intent is relevant, and certainly if any of that was being communicated to the testator or testatrix, it may have been influential to her in some way, and therefore, be admissible." In making this ruling the trial court correctly relied on *In re Estate of Depriest*, 733 S.W.2d 74 (Tenn. Ct. App. 1986), in which this court discussed the significance of the state of mind of the person accused of wielding undue influence over another. In our analysis, we recognized that while motive has no

---

[7] The relevance of Carroll's convictions for aggravated cruelty to animals, abuse or neglect of animals, feeding garbage to swine, adulterating or misbranding food, selling adulterated or misbranded food, discharging pollutants into water, and unlawfully disposing of over 500 pounds of litter arose from the fact that under Maryland law Carroll may have been prohibited from running a farming operation or he may have been substantially restricted in the type of farming he would be permitted to operate, which may have rendered it financially impractical for Carroll to maintain a farming operation on the trust property in Maryland. The trust provided that once Carroll "ceased to operate the farm," Ralph had the right to operate the farm. As a consequence, Carroll ran the risk of forfeiting his right to operate the farm.

bearing, "undue influence does require a specific intent to subject the mind of the testator to the influence and direction of the person exercising the influence." *Id.* at 78. "[W]ith respect to undue influence shown by direct proof without the aid of the presumption [arising from a confidential relationship] . . . the proof must show an intent by the dominant person to impose his or her will on the person being influenced." *Id.* We therefore affirm the trial court's ruling that the evidence was admissible for the limited purpose described by the trial court.

## MATERIAL EVIDENCE TO SUPPORT JURY FINDINGS

The jury found that Carroll and Linda both had a confidential relationship with Mrs. Schisler when the will was executed on November 15, 2005, and that the will was invalid because it was obtained through the undue influence of Carroll and Linda. Findings of fact by a jury in civil actions shall be set aside only if "there is no material evidence to support the verdict." Tenn. R. App. P. 13(d).

In reviewing the evidence presented to a jury, the appellate court may not weigh the evidence or make our own credibility determinations. *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994) (other citations omitted). We must take the strongest legitimate view of the evidence that favors the verdict, disregard all contrary evidence, and allow all reasonable inferences to sustain the verdict. *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000). When a record contains material evidence supporting a verdict, the judgment based on that verdict will not be disturbed on appeal. *Alexander,* 24 S.W.3d at 273-74 (Tenn. 2000) (citing *Reynolds*, 887 S.W.2d at 823; Tenn. R. App. P. 13(d)). Only if we determine that the record does not contain material evidence to support the jury's verdict can we set the judgment aside. *Turner v. Jordan*, 957 S.W.2d 815, 824 (Tenn. 1997); *Jackson v. Patton*, 952 S.W.2d 404, 405 (Tenn. 1997); *Next Generation, Inc. v. Wal-Mart, Inc.*, 49 S.W.3d 860, 863 (Tenn. Ct. App. 2000).

## CONFIDENTIAL RELATIONSHIP

The jury found that both Carroll and Linda had a confidential relationship with Mrs. Schisler. A confidential relationship is one that gives one person dominion and control over another. *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002) (citing *Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn. 1995). "There are two sources of such confidential relationships: (1) 'legal confidential relationships'[8] and (2) 'family and other relationships.'" *In re Estate of Brevard*, 213 S.W.3d 298, 302 (Tenn. Ct. App. 2006) (citing *Matlock*, 902 S.W.2d at 385-86). Typical familial relationships are not confidential relationships *per se* unless there is specific evidence of domination and control

---

[8] Legal confidential relationships are fiduciary relationships by nature and are confidential *per se* because of the status of the parties. *Kelley v. Johns*, 96 S.W.3d 189, 195 (Tenn. Ct. App. 2002).

of one family member over the other.[9] *Brevard*, 213 S.W.3d at 303 (citing *Kelley v. Johns*, 96 S.W.3d 189, 197 (Tenn. Ct. App. 2002)).

There is material evidence to support the jury's findings that Carroll and Linda had a confidential relationship with Mrs. Schisler given the degree of dominion and control both had over their mother. Mrs. Schisler was partially incapacitated and living with Linda and dependent upon Linda during the last year of her life. Specifically, she depended on Linda to care for her, to feed her, to house her, and to transport her. As for Carroll, the confidential relationship arose out of their financial dealings and the fact that Mrs. Schisler was financially dependent on Carroll. Ever since her husband died in 1982, Mrs. Schisler had a joint account with Carroll, her social security checks were deposited into the joint account with Carroll, the income from Carroll's farming operations, which was Mrs. Schisler's only income but for her social security benefits, was deposited into the joint account, and Carroll was in complete control of the funds in that account and how they would be dispersed. The scope and extent of a person's financial dependence on another is relevant and material to the issue of whether a confidential relationship exists, and there is material evidence in the record to support the finding that Mrs. Schisler was very dependent on Carroll for her financial well-being.

We, therefore, conclude that the record contains material evidence supporting the jury's findings that both Carroll and Linda had a confidential relationship with Mrs. Schisler.

UNDUE INFLUENCE

The jury also held that both Carroll and Linda had a confidential relationship with Mrs. Schisler. Proof of a confidential relationship is not, by itself, sufficient to make out a prima facie claim of undue influence. *Kelley*, 96 S.W.3d at 198. Contestants must also show the existence of other suspicious circumstances that would show that the November 15, 2005 will was not entirely Mrs. Schisler's free and independent act. *See id.* Suspicious circumstances of undue influence often include:

(1) the existence of a confidential relationship between the testator and beneficiary;
(2) the testator's physical or mental deterioration;
(3) the beneficiary's active involvement in procuring the will;
(4) secrecy concerning the will's existence;
(5) the testator's advanced age;
(6) the lack of independent advice in preparing the will;
(7) the testator's illiteracy or blindness;
(8) the unjust or unnatural nature of the will's terms;
(9) the testator being in an emotionally distraught state;

---

[9] An unrestricted power of attorney creates a confidential relationship between the parties. *Matlock*, 902 S.W.2d at 386. However, an unexercised power of attorney does not in and of itself create a confidential relationship. *Childress*, 74 S.W.3d at 329.

-10-

(10) discrepancies between the will and the testator's expressed intentions; and

(11) fraud or duress directed toward the testator.

*Id*. at 196.

The existence of a confidential relationship, together with a transaction by which the dominant party obtains a benefit from the other party or another suspicious circumstance, triggers a presumption of undue influence. *Roberts v. Chase*, 166 S.W.2d 641, 650-51 (Tenn. Ct. App. 1942). This presumption can only be rebutted by clear and convincing evidence of the fairness of the transaction. *Richmond v. Christian*, 555 S.W.2d 105, 107 (Tenn. 1977). The difficulty in proving the fairness of a transaction varies depending on the circumstances of a particular case and the strength of the presumption of undue influence. *Id*. at 108. A lack of suspicious circumstances can rebut the presumption. *Parish v. Kemp*, No. M2008-02430-COA-R3-CV, 2009 WL 3074620, at *6 (Tenn. Ct. App. Dec. 11, 2008) (citing *Simmons v. Foster*, 622 S.W.2d 838, 841 (Tenn. Ct. App. 1981)).

The evidence submitted by the contestants establishes at least five suspicious circumstances beyond the existence of the confidential relationship. First, there is material evidence in the record that Mrs. Schisler's mental and physical health had deteriorated, due in part to the stroke she suffered in 2005,[10] and that both of them played an active role in procuring the November 15, 2005 will and the revocation of the family trust. Moreover, both of them accompanied Mrs. Schisler to the meeting with the Maryland lawyer in 2005, when Mrs. Schisler made substantial changes to her estate planning that specifically benefitted Carroll and Linda. Further, Carroll (and his girlfriend) assisted Mrs. Schisler by preparing the deeds to convey the family farm and the Dogwood property to Carroll, and Carroll drove his mother to the courthouse to have the deeds executed and notarized. The record also reveals that during the time period relevant to the issues, a host of disturbing events had arisen within the family that caused Mrs. Schisler to be emotionally distraught. Some of the more relevant events were succinctly stated by the trial court during the Motion for New Trial hearing:

She was made to believe that Ralph was encroaching on the farm with the fence; and that Donnie was stealing her money. . . . This Court is certainly comfortable in letting the will contest come out as it did in this Tennessee court; and let the parties then litigate in Maryland the validity of the deeds. . . . The case did . . . at least subject the jury and [t]he Court to a lot of alleged misconduct by the various children or siblings. Those disputes were oftentimes known by the testatrix. And if she accepted the wrong person's spin on those disputes, it could have influenced her making of her will and these deeds.

We also note that Mrs. Schisler was not afforded the benefit of independent advice due to the fact that either Carroll or Linda were present whenever Mrs. Schisler sought the assistance of an

---

[10]Following her stroke, Mrs. Schisler had very limited vision and a host of medical problems during the last couple years of her life.

attorney.  When it is difficult to determine the fairness of a transaction, independent advice may be sufficient to overcome the presumption of undue influence. *Richmond*, 555 S.W.2d at 107-08.  As the Tennessee Supreme Court explained in *Turner v. Leathers*, "independent advice means that the adviser must not only be competent but independent." 232 S.W.2d 269, 271 (Tenn. 1950).  In other words, the adviser must be so disassociated from the interests of the intended donee as to be in a position to advise the donor impartially and confidently as to the consequences of the intended gift. *Id.*  Here, the evidence fully supports a finding that the advice Mrs. Schisler received from the Lawrenceburg attorney was not independent given the active roles Carroll and Linda played.

We, therefore, conclude that the record contains material evidence supporting the jury's findings that both Carroll Schisler and Linda Stem had a confidential relationship with Mrs. Schisler, that they did not overcome the presumption that the will was obtained through the undue influence of Carroll Schisler and Linda Stem and, therefore, the November 15, 2005 will was invalid.

## In Conclusion

The judgment of the trial court is affirmed in all respects and this matter is remanded with costs of appeal assessed against Appellants, Carroll Lynn Schisler, Sr. and Linda Lou Stem.

_____
FRANK G. CLEMENT, JR., JUDGE