IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 1, 2022

## IN RE ANNA W. ET AL.[1]

**Appeal from the Juvenile Court for Madison County**
**No. 59-54-029        Christy R. Little, Judge**

_____

### No. W2022-00657-COA-R3-PT
_____

This is a termination of parental rights case.  The mother appeals the trial court's order terminating her parental rights, arguing that it erred in denying her motion to continue the trial and in considering hearsay evidence in its best interests analysis.  For the reasons discussed herein, we affirm in part and reverse in part the trial court's order terminating mother's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part, Reversed in Part, and Remanded.**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Bob C. Hooper,  Brownsville, Tennessee, for the appellant, Evette W.

Jonathan Skrmetti, Attorney General and Reporter, and Erica M. Haber, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

Jennifer C. Covellis, Jackson, Tennessee, Guardian Ad Litem.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Evette W. ("Mother") is the mother to three minor children, Anna W., Eden W., and Elijah W. (collectively, "Children"). Anna W. was born in April 2012, Eden W. in September 2017, and Elijah W. in January 2019.

---

[1] In cases involving termination of parental rights, it is this Court's policy to remove the full names of children and other parties to protect their identities.

On August 14, 2020, Mother was arrested on charges of aggravated burglary and possession of stolen property. On August 20, 2020, the Department of Children's Services ("DCS") received a referral concerning the apparent abandonment of the Children. On the same date, the juvenile court granted temporary custody of the Children to DCS. Several days later, DCS filed a petition in the juvenile court to adjudicate the Children dependent and neglected, and following a hearing, an order finding dependency and neglect was entered on March 2, 2021. Additionally, this order ratified a permanency plan previously created for the Children and Mother which had goals of parent reunification and "exit with relative." Mother had various responsibilities under this permanency plan, as will be discussed in more detail later in this Opinion. Although Mother was incarcerated at the time this plan was created, she participated by phone. A second permanency plan was created on March 11, 2021, and later ratified on April 6, 2021. Mother's responsibilities under this permanency plan remained largely the same. However, unlike the initial permanency plan, this plan included the goal of adoption along with return to parent. Mother objected to the goal of adoption.

On July 28, 2021, DCS filed a petition for termination of Mother's parental rights, setting forth multiple grounds for termination, including: (1) abandonment by incarcerated parent; (2) substantial noncompliance with the permanency plan; (3) persistent conditions; and (4) a failure to manifest an ability and willingness to assume custody. Trial on the petition was set for January 25, 2022. On January 21, 2022, Mother, through her counsel, filed a motion to continue the trial, stating that she had entered a "drug and alcohol rehabilitation center" and would not be able to personally appear at the termination hearing. The trial court denied the motion with the proviso that, if Mother was indeed in a rehab facility and could provide proof thereof, it would allow her to participate via Zoom rather than appear in person. Mother failed to provide any such proof; failed to further contact her attorney concerning the court's ruling on the motion and subsequent trial; and failed to attend the trial on January 25, 2022. Following trial, in an order entered April 26, 2022, the trial court terminated Mother's parental rights, finding that DCS had proven, by clear and convincing evidence, the grounds of abandonment by incarcerated parent,[2] substantial noncompliance with the permanency plan, persistent conditions, and a failure to manifest an ability and willingness to assume custody. The trial court further found that it was in the Children's best interests that Mother's parental rights be terminated. This appeal followed.

## ISSUES PRESENTED

Mother raises two issues on appeal, restated as follows:

---

[2] At trial, the trial court determined that DCS had not proven the ground of abandonment by failure to visit, which ground is incorporated within the ground of abandonment by incarcerated parent. DCS conceded this and, as discussed herein, the trial court determined that there had been abandonment by an incarcerated parent on other bases.

1. Whether the trial court erred in not granting Mother's motion for a continuance.
2. Whether the trial court considered hearsay evidence in its best interest analysis.

## STANDARD OF REVIEW

"A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re Carrington H.*, 483 S.W.3d 507, 521 (Tenn. 2016) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010)). Although this right is considered to be both fundamental and constitutionally protected, it is not absolute. *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007). This right "continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). "[T]he state as *parens patriae* has a special duty to protect minors," *Hawk v. Hawk*, 855 S.W.2d 573, 580 (Tenn. 1993) (quoting *Matter of Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)), and "Tennessee law . . . thus . . . upholds the state's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Id.*

Under Tennessee law there exist "[w]ell-defined circumstances . . . under which a parent's rights may be terminated." *In re Roger T.*, No. W2014-02184-COA-R3-PT, 2015 WL 1897696, at *6 (Tenn. Ct. App. Apr. 27, 2015). These circumstances are statutorily defined. *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005)). "To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "'Clear and convincing evidence' is 'evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Id.* (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). This heightened burden of proof "minimizes the risk of erroneous decisions." *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007).

Due to this heightened burden of proof, we must adapt our customary standard of review:

> First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights.

- 3 -

*In re Audrey S.*, 182 S.W.3d at 861.

## DISCUSSION

*Mother's Motion to Continue*

Mother's first issue on appeal concerns the trial court's denial of her motion to continue the trial. "The granting or denial of a motion for a continuance lies in the sound discretion of the court. The ruling on the motion will not be disturbed unless the record clearly shows abuse of discretion and prejudice to the party seeking a continuance." *State Dep't of Children's Servs. v. V.N.*, 279 S.W.3d 306, 317 (Tenn. Ct. App. 2008) (quoting *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997)).

Mother moved for a continuance only days prior to the trial date that had been pending for months, citing that she was residing in a rehab facility and would be unable to personally appear. The trial court denied the motion to continue the trial, but in so doing stated that Mother would be able to participate by Zoom if she provided proof to the court that she indeed was living in a rehab facility; otherwise Mother would be required to attend the trial in person. At the time of the hearing, Mother had failed to provide any proof of her living arrangements to either her attorney or the trial court, nor had she even attempted to maintain contact with her attorney. Although Mother did not appear at the hearing, her attorney was present and participated on her behalf. [3] In *In re Eric G.*, No. E2017-00188-COA-R3-PT, 2017 WL 4844378 (Tenn. Ct. App. Oct. 25, 2017), the mother filed a motion to continue her trial the day before the scheduled termination hearing, contending that her physical and emotional health were such that she could not attend. *Id.* at *2. The trial court denied the motion, noting that mother failed to provide any medical documentation or other proof evincing the veracity of her claims. *Id.* The mother did not attend the termination hearing and appealed the denial of her motion. *Id.* We affirmed the trial court's denial, noting that the termination hearing had been set for months and that mother failed to provide any documentation of purported illness. *Id.* at *4. Similarly here, upon the filing of her motion to continue, Mother failed to provide any proof in support of the contentions in her motion to continue, and the trial court ultimately denied it. Moreover, according to the record, following the trial court's denial of the motion to continue, Mother never contacted her attorney to determine whether the motion was granted or denied. She simply failed to appear at trial. We find no indication in the record that the trial court abused its discretion by the denial of Mother's motion to continue.

*Grounds for Termination*

Although Mother does not challenge the grounds of her termination or whether the

---

[3] Notably, Mother did have a warrant out for her arrest at the time of trial, and her probation officer testified that if she appeared in court, she would have been arrested.

termination was in the Children's best interests, this Court will address those matters according to the direction of our Supreme Court. *See In re Carrington H.*, 483 S.W.3d at 535.

<u>Abandonment by an Incarcerated Parent</u>

The trial court terminated Mother's parental rights on the ground of abandonment by an incarcerated parent. Abandonment by an incarcerated parent is expressly defined by Tennessee Code Annotated section 36-1-102(1)(A)(iv) and is established when:

> A parent or guardian is incarcerated at the time of the filing of a proceeding, pleading, petition, or amended petition to terminate the parental rights of the parent or guardian of the child who is the subject of the petition for termination of parental rights or adoption, or a parent or guardian has been incarcerated during all or part of the four (4) consecutive months immediately preceding the filing of the action and has:
>
> *(a)* **Failed to visit, has failed to support, or has failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding the parent's or guardian's incarceration;**
> *(b)* Failed to visit, has failed to support, or has failed to make reasonable payments toward the support of the child during an aggregation of the first one hundred twenty (120) days of nonincarceration immediately preceding the filing of the action; or
> *(c)* **Has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.**

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (emphasis added).[4] Here, the trial court determined that Mother abandoned the Children by a failure to support and by engaging in conduct that exhibited a wanton disregard for the Children's welfare.

As it pertains to failure to support, we note that the petition to terminate Mother's parental rights was filed on July 28, 2021. Mother was incarcerated for part of the four months preceding the filing of the petition from June 2, 2021, until her release on June 22, 2021. "'[F]ailed to support' or 'failed to make reasonable payments towards such child's support' means the failure, for a period of four (4) consecutive months, to provide monetary support or the failure to provide more than token payments toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period." Tenn.

---

[4] We have cited herein to the version of the statute in effect at the time of the filing of the termination petition.

Code Ann. § 36-1-102(1)(D). The trial court found that Mother had failed to support the Children from the time of their removal in August of 2020 to the time of the filing of the termination petition on July 28, 2021—an eleven-month period that included the four consecutive months immediately preceding Mother's incarceration in June of 2021. There is no indication in the record that Mother has ever attempted to support the Children since their initial removal in August of 2020. Accordingly, we find this ground proven by clear and convincing evidence.

The trial court also found that Mother had engaged in conduct exhibiting a wanton disregard for the Children's welfare prior to her incarceration. Incarceration itself does not denote a finding of wanton disregard, but rather, "[a]n incarcerated or recently incarcerated parent can be found guilty of abandonment only if the court finds, by clear and convincing evidence, that the parent's pre-incarceration conduct displayed a wanton disregard for the welfare of the child." *In re Audrey S.*, 182 S.W.3d at 866. This Court has previously held that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of the child." *Id.* at 867-68. "When considering whether a parent's criminal conduct constitutes wanton disregard, we consider 'the severity and frequency of the criminal acts.'" *In re Jonathan M.*, 591 S.W.3d 546, 555 (Tenn. Ct. App. 2019) (quoting *In re Kierra B.*, No. E2012-02539-COA-R3-PT, 2014 WL 118504, at *8 (Tenn. Ct. App. Jan. 14, 2014)). Here, the trial court determined that Mother had engaged in a pattern of criminal history dating back to 2017 and continuing even beyond the Children's removal from her custody, noting, among other things, that she "had been in jail more times than she had been out of jail during the time the [C]hildren have been in [DCS's] custody." Mother's pattern of criminal behavior includes theft, aggravated physical assault, and a combination of the two. In light of these findings, the trial court determined that she had engaged in conduct prior to her incarceration that exhibited a wanton disregard for the Children's welfare. We agree. The record is replete with evidence of Mother's consistent pattern of criminal behavior, including repeated incarcerations and probation violations. These concerns constitute conduct that exhibits a wanton disregard for the Children's welfare. *In re Audrey S.*, 182 S.W.3d at 867-68. Accordingly, we find that this ground has been proven by clear and convincing evidence.

### Substantial Noncompliance with the Permanency Plan

The trial court also terminated Mother's parental rights on the ground of substantial noncompliance with the permanency plan. Tennessee Code Annotated section 36-1-113(g)(2) provides that termination of a party's parental rights may be predicated upon a "substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan." Tenn. Code Ann. § 36-1-113(g)(2). The determination as to whether there has been substantial noncompliance is a question of law which we review de novo with no presumption of correctness. *In re Valentine*, 79 S.W.3d at 548. "Trivial,

minor, or technical deviations from a permanency plan's requirements will not be deemed to amount to substantial noncompliance." *In re M.J.B.*, 140 S.W.3d 643, 656 (Tenn. Ct. App. 2004) (citing *In re Valentine*, 79 S.W.3d at 548; *Dep't of Children's Servs. v. C.L.*, No. M2001-02729-COA-R3-JV, 2003 WL 22037399, at *18 (Tenn. Ct. App. Aug. 29, 2003)).

In this case, there were permanency plans under which Mother had numerous responsibilities. Mother's requirements in these plans remained largely the same and consisted of the following: complete a psychological assessment with a parenting component and then follow all the recommendations thereof; complete a medication evaluation; notify the family social worker once she was released from jail and stay up to date on all probation regulations and sign a release of information for DCS to have permission to speak with her probation officer; keep DCS up to date on all contact information; obtain and maintain housing and employment; participate in services to help her build on the parenting classes she had already taken and continue those services once the Children transition home; contact the family social worker upon her release from jail so that the social worker could request therapeutic supervised visits between Mother and the Children; and keep DCS updated on all her contact information. According to testimony provided by a DCS case manager, Mother failed to comply with practically all of these requirements other than taking one medical evaluation with no follow-up, and attending two Zoom sessions with one of the Children. In light of the evidence contained in the record, we conclude that there is clear and convincing evidence to support a finding that Mother was in substantial noncompliance with the permanency plans.

Persistence of Conditions

The trial court also terminated Mother's parental rights on the ground commonly known as "persistent conditions." This ground applies when:

> (3)(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of the proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:
>
> (i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;
>
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and
>
> (iii) The continuation of the parent or guardian and child relationship

greatly diminishes the child's chances of early integration into a safe, stable, and permanent home.

Tenn. Code Ann. § 36-1-113(g)(3).

Here, the Children were removed from Mother's custody on August 20, 2020, pursuant to a protective custody order. DCS subsequently filed a petition for dependency and neglect on August 24, 2020, following which the juvenile court entered an order adjudicating the Children as dependent and neglected. Based on our reading of the statute, we do not find this ground to be supported by clear and convincing evidence. Rather, we find the language of the statute to be clear that removal of a child is to occur via "a court order entered at any stage of the proceedings in which **a petition has been filed in the juvenile court alleging that a child is dependent and neglected**." *Id.* (emphasis added). In *In re Khali J.*, No. M2021-00908-COA-R3-PT, 2022 WL 1537396 (Tenn. Ct. App. May 16, 2022), this Court found that the child at issue had been removed from the parents' custody via a trial court order and, like here, days thereafter, DCS filed a petition to adjudicate the child dependent and neglected. *Id.* at *11. In reviewing the ground of persistence of conditions, we stated that "a threshold requirement for application of this ground is that it be based on an order removing the child that was 'entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child.'" *Id.* at *12 (quoting *In re Jude M.*, 619 S.W.3d 224, 241 (Tenn. Ct. App. 2020)). Thus, because the child in that case had been removed via an order prior to the filing of a dependency and neglect petition, the threshold requirement had not yet been met as to this ground. We find similarly in this case. Here, the Children were removed via a protective custody order on August 20, 2020, *prior* to DCS's filing of a petition to adjudicate the Children as dependent and neglected on August 24, 2020. Accordingly, we conclude that the threshold requirement for this ground has not been met and, consistent with the *In re Khali J.* case, reverse the trial court's termination of Mother's parental rights as to this ground.

## Failure to Manifest an Ability & Willingness to Assume Custody

Finally, the trial court also terminated Mother's parental rights on the ground that she failed to manifest an ability and willingness to care for the Children. Tennessee Code Annotated section 36-1-113(g)(14) provides a ground for termination when:

A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

Tenn. Code Ann. § 36-1-113(g)(14). This statute is two-pronged and requires a finding

- 8 -

that Mother has both failed to manifest an ability and willingness to assume custody or financial responsibility of the Children *and* that placing the Children in her custody would pose "a risk of substantial harm" to the Children's "physical or psychological welfare."

As to the first prong, the trial court determined that Mother had "failed to manifest, by act or omission, an ability or willingness to personally assume legal and physical custody or financial responsibility of the Children," noting that Mother continued to engage in criminal activity resulting in three separate incarcerations during the Children's custodial period, that she did not comply with her probation requirements or the permanency plan requirements, and that at the time of trial had an outstanding warrant for her arrest. As a result, the Children lingered in foster care. We agree with the trial court. Again, we note that Mother has not ceased her criminal actions that ultimately led to the Children initially being removed from her custody nor has Mother made, or even attempted, any strides towards completing her responsibilities under the parenting plan. There is no indication in the record that Mother has taken *any* action to manifest either an ability or willingness to assume physical custody or financial responsibility of the Children.

As to the second prong, the trial court determined that placing the Children into Mother's legal and physical custody would pose a risk of substantial harm to their physical and psychological welfare. Specifically, the trial court noted that Anna had experienced trauma in her Mother's home and was dealing "with a lot of anger issues, aggression, and defiance" and had been diagnosed with post-traumatic stress disorder as a result of the trauma. Moreover, testimony indicated that Anna did not feel comfortable visiting with Mother and that she was fearful of her. As to the other two children, they have only seen Mother twice since entering DCS custody and are also fearful of her. The last time the two visited with Mother was in February 2021, and they did not recognize her and had minimal interaction with her. Based on a review of the record and Mother's long and tortured history of violence and incarceration, we agree with the trial court's finding that placing the Children into Mother's physical and legal custody would pose a risk of substantial harm to the physical and psychological welfare of the Children.

In light of the foregoing, we conclude that the trial court's finding of a ground pursuant to section 36-1-113(g)(14) has been satisfied by clear and convincing evidence.

*Best Interests*

Once it is determined that a ground exists for terminating a party's parental rights, the focus then shifts to whether termination is in the child's best interest. Tennessee Code Annotated section 36-1-113(i) provides a non-exhaustive list of factors for the courts to consider in its best interest analysis. Making a determination concerning a child's best interest "does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s . . . factors and then a determination of whether the sum of factors tips in favor of or against the parent." *In re Audrey S.*, 182 S.W.3d at 878. Rather, "[t]he relevancy and weight to be

given each factor depends on the unique facts of each case." *Id.* In its order, the trial court made specific findings as to each of the best interest factors espoused in section 36-1-113(i) and determined that *all* of the factors weighed in favor of terminating Mother's parental rights. Of particular importance, the trial court noted Mother's repeated incarceration and criminal behavior, lack of stable housing or income, her substantial noncompliance with the permanency plans, and her failure to complete the psychological assessment. Moreover, the trial court also noted that Mother has not maintained consistent visitation with the Children and that the two younger Children are bonded with their foster parents while Anna is afraid of Mother and has previously experienced trauma while in her care. Having carefully reviewed the record on appeal, we agree with the trial court's findings. The record makes clear that Mother continues to partake in criminal behavior that results in incarceration and does not offer any stability that the Children now have in their lives. Moreover, the Children appear to be thriving in foster care away from Mother.

On appeal, however, Mother raises an issue in connection with an exhibit that the trial court considered in making its best interest determination. Mother argues that the trial court erred in admitting the exhibit in evidence because it contained inadmissible hearsay. In the termination hearing, DCS questioned the family social worker regarding Anna's trauma history which was contained in a document identified as her psychological assessment and proffered into evidence as Exhibit 18. Mother's counsel objected on hearsay grounds and argued that it was not properly authenticated. DCS, however, maintained that Exhibit 18 was obtained as part of the permanency plan previously ratified by the trial court and is admissible as part of a court order. Ultimately, the trial court admitted Exhibit 18. "A decision whether to admit or exclude evidence lies within the discretion of the trial court." *In re Estate of Schisler*, 316 S.W.3d 599, 606 (Tenn. Ct. App. 2009) (citing *Young v. Hartley*, 152 S.W.3d 490 (Tenn. Ct. App. 2004)). This Court reviews these evidentiary decisions under an abuse of discretion standard, which provides that:

> [A] trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge*, 42 S.W.3d at 652 (internal citations omitted). Nevertheless, "even if a trial court commits error in admitting or excluding evidence, '[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]'" *In re Angel M.*, No. E2016-02061-COA-R3-PT, 2017 WL 3228314, at *9 (Tenn. Ct. App. July 31, 2017) (quoting Tenn. R. Evid. 103(a)). "An error is substantial, or not harmless, 'if the trial court's error would have more probably than not affected the judgment or would result in prejudice to the judicial process.'" *Id.* (quoting *Morgan v.*

*Superior Catering Servs.*, No. E2014-00005-COA-R3-CV, 2015 WL 1594011, at *11 (Tenn. Ct. App. April 7, 2015)). In reviewing the record, we agree with Mother that the information contained in Exhibit 18 is hearsay. Moreover, we find nothing to convince us that Exhibit 18 would fall under one of the numerous hearsay exceptions. DCS argues the assessment was part of a previous court order. Even assuming this to be true, this does nothing to cure the issue of hearsay. As such, the trial court erred in admitting the exhibit. Nevertheless, we find that the error was harmless, as the information contained in the document was cumulative to other evidence presented at trial concerning Anna's psychological trauma and did not affect the trial court's ultimate determination.

Accordingly, we find that there was clear and convincing evidence in the record to support the trial court's finding that it was in the Children's best interest that Mother's parental rights should be terminated.

## CONCLUSION

Based on the foregoing, the trial court's finding on the ground of persistence of conditions is reversed but its termination of Mother's parental rights as to the minor children is in all other respects affirmed.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE