IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 6, 2010 Session

## MONYA JILL RAYANNE ROBERTS v. JAMES KEVIN ROBERTS

**Appeal from the Circuit Court for Sevier County**
**Nos. 2006-OP-74, 2006-0205-III, 2006-0211-IV      Rex Henry Ogle, Judge**

---

**No. E2009-02350-COA-R3-CV - FILED NOVEMBER 29, 2010**

---

On appeal, James Kevin Roberts ("Husband") challenges the trial court's refusal to grant a continuance to allow his fifth attorney time to prepare for trial, the trial court's refusal to exclude an expert witness called by Monya Jill Rayanne Roberts ("Wife"), the division of the marital estate, the amount of child support and the award of discretionary costs to Wife. Wife challenges the trial court's denial of her request for "supplemental" attorney's fees. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Sarah C. Easter,[1] Knoxville, Tennessee, for the appellant, James Kevin Roberts.

Richard T. Wallace, Sevierville, Tennessee, for the appellee, Monya Jill Rayanne Roberts.

**OPINION**

I.

Husband and Wife were married in 1996 and separated in March 2006. One child, Jordan, was born to their union. On or about March 24, 2006, Husband became extremely paranoid during a drug-induced episode and ran through the house waving a gun. Wife filed

---

[1]Counsel was granted permission to withdraw before oral argument, and did not appear for argument nor did Husband. Wife's counsel appeared and argued.

a petition for an order of protection. Wife later filed a complaint for divorce.[2] Husband eventually admitted an addiction to cocaine and methamphetamine. Numerous trial exhibits portrayed serious skin lesions from the use of methamphetamines. It took the case three years to come to trial after which the court awarded Wife a divorce on the ground of inappropriate marital conduct. Husband does not challenge the granting of the divorce to Wife but does challenge almost all the monetary aspects of the judgment.

When the parties married in 1996, Wife was employed by the Tennessee Valley Authority where she earned approximately $35,000 per year. When Wife became pregnant, she and Husband agreed she would stay home with the child and assist Husband in their business enterprises. By the time of the separation, the parties were co-owners of four limited liability companies; there were also two businesses that operated as sole proprietorships. Direct Marketing Services, LLC, was the entity used by Husband for the marketing of time-share vacation properties. There is no dispute that when Husband is in control of his drug problems he is very talented at marketing time-shares and has the ability to generate upwards of $1,500,000 a year in gross revenues in a highly profitable enterprise. Another marital asset was a business entity called Monya Roberts Enterprises, LLC, established to arrange travel related to the various business enterprises. Typically, Wife would arrange the travel and charge the expense to a credit card. Direct Marketing would reimburse Monya Roberts Enterprises its expenses plus a weekly payment of $800 for bookkeeping and management. When the marriage fell apart, Direct Marketing left unpaid a credit card bill of $32,970.32 unpaid and stopped paying the weekly management and bookkeeping fee.

During the marriage, Husband established a mysterious "business relationship" in the Dominican Republic. Between March 1, 2006 and the end of May 2006, Husband transferred $171,282.92 in marital assets to the Dominican "business relationship." One transfer was a brokerage account with a balance of $106,252.92 and another was a bank account with a balance of $65,031.

In an agreed order entered May 24, 2006, the parties stipulated that effective April 2006 and pending the divorce, Wife would receive temporary spousal support of $800 per month to be paid "by direct deposit from Direct Marketing, LLC," and Husband would pay pendent lite child support of $2,100 per month.

Husband then formed a new entity called Titan Development Group, LLC, into which he transferred the leases and accounts of Direct Marketing in an attempt to circumvent the

---

[2]Husband also filed a separate complaint for divorce. The two divorce cases were consolidated with the order of protection case.

court order. The parties, the court and the witnesses referred to the two entities collectively as "the Business." We will continue with that reference. Wife filed a motion asking the trial court to appoint a receiver to prevent Husband from pirating away the assets of the Business pending the divorce. The court allowed Husband to continue in control of the Business but ordered Husband to provide monthly accountings of the Business's activities. The Husband did not comply with this order, but similar financial information was made available at trial through CPA James Lloyd who was retained by Husband as an expert.

The financial records show that for years 2003 through 2005 Direct Marketing had total gross receipts of $5,269,041. Direct Marketing and Titan had combined receipts in 2006 of $1,585,080. Titan grossed $1,869,815 in 2007 and $1,786,292 in 2008. The child support and spousal support that Husband paid pending the divorce, came from the Business. According to Wife's expert, Tarwater, Husband derived a direct personal economic benefit from Titan of $323,122 in 2007 and $354,189 in 2008. There were other personal expenses, such as Husband's attorney fees, that were not included in the expert's calculations.

Husband filed a joint tax return for 2005 without Wife's permission. The filing resulted in a tax lien being filed and recorded against the parties and their properties in the amount of $49,402.36.

Mr. Lloyd, although hired by Husband's attorney, considered himself to a neutral witness. He assigned a "conservative" value of $767,000 to the Business. Wife, as co-owner, concurred in Mr. Lloyd's valuation.

During the marriage, the parties acquired several pieces of real property. One was the home where they lived at the time of their separation. Husband was ordered to pay the mortgage but did not, with the result that the mortgage was foreclosed upon and the home sold in 2010. The parties were left with a deficiency judgment of approximately $30,000. The other properties were without encumbrance, other than the tax lien, and had a combined value of approximately $411,000.

In March 2009, Husband was held in contempt and jailed for a period of time for his willful failure to pay child support. The court released Husband despite his failure to pay the support on his argument that he needed to tend to the Business for the good of all concerned. Husband had not paid any support since being released from jail.

On June 30, 2009, Husband's trial counsel filed a notice of appearance. This was the fifth attorney[3] who had appeared on his behalf. The first four attorneys withdrew. The fourth cited "irreconcilable differences" with Husband as the ground for withdrawal. Husband's last counsel also filed a motion to continue the trial set for July 13, 2009, giving as her reason the "need [for] additional time to fully investigate and prepare for trial." The order disposing of that motion is not in the record, but the trial went forward on July 13, 2009. There is no transcript in the record of the hearing on the motion to continue.

During the trial, Husband objected to Wife's CPA expert on the ground that his counsel did not receive 30-days notice of the expert's testimony. The court asked Husband's counsel how she would have received notice since she had not been in the case for 30 days. Wife's counsel also pointed out that Mr. Tarwater was on Wife's witness list. Also, Tarwater was listed in a supplemental response to Husband's interrogatories. The court overruled the objection without giving a reason.

With regard to the marital property, the trial court weighed the evidence and determined that a reasonable value of the Business was $600,000. The court awarded the Business to Husband. The court also awarded Husband the $106,252.92 he had taken from a brokerage account and the $65,031 he had taken from a bank account, and noted that, without the court's permission, Husband had taken numerous monies that were within the court's jurisdiction. The court awarded all the real property, with a stipulated value of $411,000 to Wife. The court found that Wife was economically disadvantaged and held Husband responsible for the marital debt totaling $136,997.53, as alimony in solido. This amount included the deficiency judgment on the marital home, the unpaid credit card balance left owing by Monya Roberts Enterprises, and the tax lien. The court made Wife the primay residential parent of the minor child, and set Husband's monthly child support at $1,800. This represented a downward departure from the $2,100 previously set by agreement "to give Mr. Roberts an opportunity to try to get this business in a little better shape."

The court denied Wife's motion for supplemental attorney's fees. The motion was part of a pleading filed June 19, 2007, entitled "Preliminary Response to [Husband's] Motion to Reduce [Support], [Wife's] Second Motion for Contempt, and Motion for Supplemental Attorney's Fees." The motion does not identify any particular basis for awarding "supplemental attorney's fees;" however, a later filing by Wife related to the same issue cites Husband's willful contempt and his payment of legal expenses out of marital assets as reasons to award Wife supplemental attorney's fees. The judgment of divorce was entered October 19, 2009. Husband filed a notice of appeal on November 17, 2009.

---

[3]By Wife's count, it was the seventh.

Wife filed a motion for discretionary costs on October 29, 2009, which the trial court granted in an order entered January 26, 2010. The court awarded total discretionary costs of $9,396.60 consisting of $4,350 representing the expert witness fees of CPA Tarwater, appraisal fees of $1,725 for appraisers who did not testify but whose appraisals formed the basis for a stipulation of the value of the real property, and $3,321.60 in court reporters' fees for depositions and trial. Husband did not file a second, or amended notice of appeal.

## II.

Husband raises the following issues on appeal, as repeated verbatim from his brief:

> Whether the trial court erred in failing to grant [Husband's] Motion to Continue.
>
> Whether the trial court erred in valuation of [Husband's] business, which caused an inequitable division of the marital estate.
>
> Whether the trial court erred in allowing testimony from an undisclosed expert
>
> Whether the Trial Court erred in setting the child support obligation by failing to use the child support guidelines.
>
> Whether the trial court erred in directing all discretionary costs to be paid by [Husband].

Wife raises two issues in her brief which are also repeated verbatim here:

> Whether the trial court erred in denying [Wife's] Request for Attorney's Fees.
>
> Whether Husband should be granted affirmative relief on appeal while he is in willful contempt of court.

## III.

Husband recognizes that a trial court's decision whether or not to grant a continuance will not be set aside without a showing of an abuse of discretion. *See Morrow v. Drumright*, 304 S.W.2d 313, 315 (Tenn. 1957); *Barish v. Metropolitian Gov't.*, 627 S.W.2d 953, 954

-5-

(Tenn. Ct. App. 1981). ***Barish*** involved the denial of a continuance to a party who lost the services of counsel only four days before trial. ***Id***. Because the client had no counsel, she presented no proof and her case was dismissed. This court remanded for an evidentiary hearing on the issue of whether the client "wrongfully failed to cooperate with her previous counsel." ***Id***. We commented that if the attorney's withdrawal was the result of the client's failure to cooperate, it could be "no solace to Mrs. Barish in an attempt to gain a continuance." ***Id***. We also observed that the chancellor may well have been aware of circumstances that were not apparent in the record. For the benefit of the trial court, we stated,

> If on remand the chancellor should determine . . . that Mrs. Barish . . . precipitated the withdrawal of her previous counsel so close to the trial date by failure of cooperation or in some other like fashion, we are satisfied there could be no abuse of the trial court's discretion – even in exercising the drastic remedy of dismissal.

***Id***. at 955.

The record in the present case leaves no doubt that the fault in the withdrawal of no less than four attorneys before appearance of trial counsel, and now the withdrawal on appeal of trial counsel, was the fault of Husband. As Wife points out in her brief, Husband has been held in contempt repeatedly and remains in willful contempt of the trial court's orders. Husband is more than happy to make his contempt known. Accordingly, we hold there was no abuse of discretion in the trial court's refusal to grant Husband a continuance, the need for which was a result of his own actions.

Husband next argues that the trial court erred in valuing the Business at $600,000. Both parties rely on ***Anderson v. Anderson***, No. E2005-02110-COA-R3-CV, 2006 Wl 2535393 (Tenn. Ct. App. E.S., filed Sept. 5, 2006) for the general principles of valuation including the standard of review. ***Anderson*** stated:

> The value of marital property is a fact question. Thus, a trial
>
> court's decision with regard to the value of a marital asset will be given great weight on appeal. In accordance with Tenn.R.App.P. 13(d), the trial court's decisions with regard to the valuation and distribution of marital property will be presumed to be correct unless the evidence preponderates otherwise.

> The value of a marital asset is determined by considering all relevant evidence regarding value. The burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present. Thus the trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted.

*Id*. at *2 -3; (quoting *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987)).

The first basis for Husband's argument is that "the court relied too heavily upon [Wife's] expert valuation of the . . . [B]usiness, which was based on information that was inaccurate at the time of trial." Wife correctly points out that this argument is fatally flawed because the expert was not her expert, but was in fact disclosed by Husband as his expert. The information upon which the expert based his valuation was furnished by Husband. It is true that, at the insistence of Wife, the testimony of the expert was taken and presented by deposition, but it was only taken by Wife pursuant to a court order that allowed her to take the deposition because Husband failed to secure the witness's testimony for trial. Wife also correctly points out that if Husband had thought the information that he provided to the expert needed to be impeached, he had that opportunity at the deposition and apparently thought better of it. Also, we believe that the trial court correctly treated the expert, who was paid out of marital property, as a joint expert.

A second prong to Husband's argument is that the valuation by both the expert and the trial court failed to account for the intangible "goodwill" that is attributable to Husband's presence in the business, without which the Business is worthless. Husband is correct that goodwill is not a marital asset subject to distribution.

> In valuing a professional practice it has long been held that good will of the business, dependent as it is on the person and personality of the spouse practicing the profession, is not a part of the marital estate. *Smith v. Smith*, 709 S.W.2d 588 (Tenn. Ct. App. 1985); *Hazard v. Hazard*, 833 S.W.2d 911 (Tenn. Ct. App. 1991); *Enoch v. Enoch*, 1987 WL 12042 (Tenn. Ct. App. June 10, 1987).

*Kerce v. Kerce*, No. M2002-01744-COA-R3-CV, 2003 WL 22037526, at *4 (Tenn. Ct. App. M.S., filed August 29, 2003). Husband is, however, incorrect to argue that this single rule disproves the trial court's valuation. The expert hired by Husband testified that the Business was worth approximately $767,000 as of September 30, 2008, using the capitalization of

income method. Mr. Lloyd made it very clear that his valuation was a "conservative" one that discounted the value by 35% for the risk that Husband would not continue to work and the risk that the company's limited customer base would disappear. The court then discounted the expert's valuation by another $167,000, or approximately 22%. The court did not give a reason for the additional discount and it does not really matter to us since Wife does not challenge the valuation. The end result is that the court's valuation is only approximately 50% of what Husband's own expert would have valued the business before discounts for, among other things, Husband's personal prerogative. We do not find that the evidence preponderates against the trial court's valuation of the Business at $600,000, an enterprise that has consistently produced gross income in the range of $1.5 million. To the extent Husband challenges the court's distribution of marital assets for other reasons, we hold that the division was certainly within the "wide latitude [afforded trial courts] in determining an equitable division of marital property." *See Anderson*, 2006 WL 2535393 at *4.

Husband next argues that the trial court erred in refusing to exclude the testimony of CPA Tarwater because of Wife's alleged failure to disclose him. Husband provides no authority in support of his argument and bases the argument on the supposition that Mr. Tarwater was *never disclosed* in answer to his expert interrogatory. The trial court overruled Husband's objection to the testimony without explanation. The ruling is reviewed by us for abuse of discretion. *See In re Estate Of Schisler*, 316 S.W.3d 599, 606 (Tenn. Ct. App. 2009)("A decision whether to admit or exclude evidence lies within the discretion of the trial court."). As Wife pointed out to the trial court and reiterates in her brief, she *did* disclose Mr. Tarwater in her supplemental answers to interrogatories filed July 6, 2009 and her witness list filed July 7, 2009.

Wife also has an explanation as to the late timing of her disclosure. First, Wife points out that if Husband had made the financial disclosures he was ordered to make, but did not make, the information for which Mr. Tarwater was needed would have been readily available. Wife was only able to obtain the underlying financial information through Mr. Lloyd, the expert Husband had disclosed. She was only able to take Mr. Lloyd's deposition in July 2009, days before the trial. In that deposition she learned, for the first time, that Mr. Lloyd did not have a calculation of the amount that Husband personally benefitted from the Business. It was only then that Mr. Tarwater was needed. Under these circumstances, of which the trial court was aware, we hold there was no abuse of discretion in the trial court's refusal to exclude the testimony of Mr. Tarwater. We also note that, as Wife points out, Husband admitted deriving a personal benefit from the Business in the amount that Mr. Tarwater calculated. Therefore, any error would have been harmless. Tenn. R. App. P. 36(b).

We now decide the issue of whether the trial court erred in setting child support at $1,800 per month. A good overview of the law we must apply and the standard of review is provided by our opinion in ***Richardson v. Spanos***, 189 S.W.3d 720 (Tenn. Ct. App. 2005):

> Ever since 1984, the process and criteria for ascertaining a parent's child support obligation has been governed by Child Support Guidelines promulgated by the Tennessee Department of Human Services in accordance with Tenn. Code Ann. § 36-5-101(e) (Supp. 2004).
>
> Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. ***Hopkins v. Hopkins***, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. ***Brooks v. Brooks***, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. ***Berryhill v. Rhodes***, 21 S.W.3d 188, 193 (Tenn. 2000); ***Jones v. Jones***, 930 S.W.2d 541, 545 (Tenn. 1996); ***Smith v. Smith***, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).
>
> Under current law, the amount of support derived from a proper application of the formula in the Child Support Guidelines becomes the presumptive amount of child support owed. This amount of support is rebuttable. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.01(1)(d)(1) (Mar. 2005); ***Taylor v. Fezell***, 158 S.W.3d 352, 357 (Tenn. 2005). Accordingly, trial courts may, in their discretion, deviate from the amount of support required by the Child Support Guidelines, ***State v. Wilson***, 132 S.W.3d 340, 343 (Tenn.2004); ***Jones v. Jones***, 930 S.W.2d at 545, but when they do, they must make specific written findings regarding how the application of the Child Support Guidelines would be unjust or inappropriate in the case. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(b) (Mar. 2005).

Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn.Ct.App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

*Id.* at 724 -725.

Husband argues that the trial court failed to make numerous findings required by the Guidelines and "simply took a number out of thin air and decided that was a downward departure." Wife, again, points out that the history of this case belies Husband's position and supports the actions taken by the trial court. Husband completely ignores the agreed order setting child support pendent lite at $2,100 per month. In approving that amount, the trial court was obligated to review the amount stipulated by the parties to see that it was appropriate under the Guidelines. Tenn. Comp. R. & Regs., ch. 1240-2-4-.01(2)(b). We presume that the court complied with the law since there is no showing to the contrary. *Richards v. Taylor*, 926 S.W.2d 569, 570 (Tenn. Ct. App. 1996) ("[W]e must presume that

the trial judge correctly and adequately considered all issues properly presented and that, absent a showing to the contrary, the judgment is complete in every respect.").

The parties' adjusted gross income in 2004 was $350,702, and the proof at trial was that, pending the divorce trial, Husband siphoned approximately $350,000 per year from the business. The precious little money Wife received before Husband quit paying spousal support and child support altogether was alimony paid out of the business. If, anything, the trial court gave Husband a break by departing downward to try to let him rebuild the damage done to the Business by his drug addiction. The finding of a need for departure was "in writing" as part of the dictated memorandum opinion. We are also sympathetic to Wife's argument that Husband comes to this court with unclean hands, having been held in continuing wilful contempt of numerous orders including the order of child support pendent lite and the child support ordered in the final judgment. In short, we hold that the trial court did not abuse its discretion in setting child support at $1,800 per month.

The final issue Husband raises is the award of discretionary costs in the amount of $9,396.60. Husband argues that the award contains numerous charges not allowable as discretionary costs. We are unable to address this issue because we did not acquire jurisdiction over the order allowing discretionary costs. Normally, the filing of a notice of appeal places jurisdiction of a case in our court and deprives the trial court of jurisdiction to act further. ***Born Again Church & Christian Outreach Ministries, Inc. v. Myler Church Bldg. Systems of the Midsouth, Inc.***, 266 S.W.3d 421, 425 (Tenn. Ct. App. 2007). Any additional matter that needs to be addressed in the trial court must be addressed once the trial court reacquires jurisdiction. ***Id***. A motion for discretionary costs, however, is different; a trial court "retains jurisdiction over a motion for discretionary costs even though a party has filed a notice of appeal." Tenn. R. Civ. P. 54.04. The retention of the issue of discretionary costs does not prevent the divorce judgment from being final for purposes of appeal. The notice of appeal from the final judgment is not premature as the term is used in Tenn R. App. P. 4(d). *See **Meek v. Successor Trustees of Marital Trust***, No. W2009-02016-COA-R3-CV, 2010 WL 3420546, at *5-7 (Tenn. Ct. App. W.S., filed Sept. 1, 2010)(construing the rule broadly to encompass any judgments that are not final at the time the notice was filed but become final after the notice was filed). The motion for discretionary costs is treated as an ancillary or collateral matter. *See **Born Again Church,*** 266 S.W.3d at 425, n.3. Although this appears to be a matter of first impression, we believe, and so hold, that a timely notice of appeal must be filed from an order allowing discretionary costs. "The failure of a party to timely file a notice of appeal . . . deprive[s] this Court of jurisdiction to hear the matter." ***Flautt & Mann v. Council of City of Memphis***, 285 S.W.3d 856, 869 (Tenn. Ct. App. 2008). Husband did not file such a notice in this case and we did not acquire jurisdiction to review the order allowing the discretionary costs.

We will now address the issues raised by Wife. One of the two issues is that the appeal should be dismissed because of Husband's continuing wilful contempt. Since we have not afforded Husband any relief on any of his arguments, we are not offended by the mere existence of the appeal. Therefore, we do not find a strong enough need to take the drastic measure of dismissing the appeal. We also note that all the cases Wife cites are unpublished and not readily available. We were unable to locate the cases in any database that would allow us to check their continued viability as even persuasive authority. As we understand the cases, we can, but are not required to dismiss an appeal because of a litigant's continuing wilful contempt. Thus, our decision to address the merits, in the final analysis, is not contrary to those cases.

The final issue we must address is Wife's argument that the trial court erred in refusing her request for supplemental attorney's fees. Wife argues that the trial court should have awarded her attorney's fees as "the needy spouse." She also asks that we award attorney's fees for services on appeal for the same reason. She argues that the assets she did receive in the distribution are encumbered by marital debts including a tax lien, therefore she received no liquid assets. We borrow the law and standard of review from *Owens v. Owens*, 241 S.W.3d 478 (Tenn. Ct. App. 2007):

> An award of attorney's fees to an economically disadvantaged spouse is usually characterized as alimony in solido. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002); *Wilder v. Wilder*, 66 S.W.3d [892, 894 (Tenn. Ct. App. 2001)]. Accordingly, a trial court considering a request for attorney's fees must consider the factors contained in Tenn.Code Ann. § 36-5-121(i), with the most important factors being the need of the economically disadvantaged spouse and the ability of the obligor spouse to pay. *Eldridge v. Eldridge*, 137 S.W.3d 1, 24-25 (Tenn. Ct. App. 2002); *Miller v. Miller*, 81 S.W.3d [771, 775 (Tenn. Ct. App. 2001)]. Trial courts customarily will award attorney's fees as alimony when an economically disadvantaged spouse would otherwise be forced to deplete assets in order to pay attorney's fees. *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000); *Palmer v. Palmer*, 562 S.W.2d 833, 839 (Tenn. Ct. App. 1977). Therefore, a party need not be required to pay legal expenses out of funds and assets awarded by the trial court and intended to provide future support and income. *Batson v. Batson*, 769 S.W.2d [849, 862 (Tenn. Ct. App. 1988)].

Awards of attorney's fees as alimony in solido are largely discretionary with the trial court. Thus, the appellate courts will ordinarily not interfere with an alimony in solido award for attorney's fees unless the trial court did not appropriately exercise its discretion based on the facts. ***Aaron v. Aaron***, 909 S.W.2d [408, 411 (Tenn. 1995)]; ***Eldridge v. Eldridge***, 137 S.W.3d at 25. A trial court fails to exercise its discretion properly when its decision is not supported by the evidence, when it applies an incorrect legal standard, when it reaches a decision which is against logic or reasoning that causes an injustice to the party complaining. ***Biscan v. Brown***, 160 S.W.3d 462, 468 (Tenn. 2005).

*Id.* at 495-496.

On the record before us, we cannot say that the trial court did not consider the appropriate factors or that the decision is not in accord with the facts or logic. The court clearly considered Wife's need in ordering Husband to pay the marital debts as alimony. It also considered the resources available to Wife and found them to be sufficient without a supplemental award of fees: "I believe there's enough assets that at this point . . . the Court is going to respectfully deny [attorney's fees]." Wife was awarded assets with a stipulated value of $411,000. The tax lien at the time of the judgment was less than $50,000, and her unpaid attorney's fees, per an exhibit filed in support of her request for fees, were in the neighborhood of $40,000. This leaves approximately $300,000 in assets even after satisfaction of the lien and payment of her attorney's fees. We hold that the trial court did not abuse its discretion in denying Wife's request for attorney's fees. We also decline her request for fees on appeal.

IV.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, James Kevin Roberts. This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for the collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE

-13-