IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 17, 2022 Session

## SAMUEL RANDALL FRIEDSAM, III, v. FRANKIE MICHELLE KRISLE

**Appeal from the Chancery Court for Rutherford County**
**No. 19CV-537        J. Mark Rogers, Judge**

———————————————————

**No. M2021-00530-COA-R3-CV**

———————————————————

Mother appeals the trial court's decision to award Father equal parenting time with the child, arguing that limitations are warranted under Tennessee Code Annotated section 36-6-406. We affirm the trial court's findings that neither abandonment nor abusive conflict support limitations on parenting time under section 36-6-406. We vacate the trial court's finding that limitations are not warranted due to physical abuse or a pattern of emotional abuse because the trial court made no finding as to whether such abuse occurred. Finally, Mother's argument as to the exclusion of evidence is waived, as she made no offer of proof

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Vacated in Part; and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and CARMA DENNIS MCGEE, JJ., joined.

R. Michelle Howser, Murfreesboro, Tennessee, for the appellant, Frankie Michelle Krisle.

Benjamin Lewis, Murfreesboro, Tennessee, for the appellee, Samuel Randall Friedsam, III.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves the minor child of unmarried parents Plaintiff/Appellee Samuel Randall Friedsam, III ("Father") and Defendant/Appellant Frankie Michelle Krisle ("Mother"). The child was born in September 2016. Following the child's birth, Mother allowed Father to have unsupervised time with the child until an incident when the child

was three months old. During this visit, Father called Mother because the child was crying uncontrollably and directed her to come get the child. Mother retrieved the child and would no longer permit Father contact with the child unless she or someone she chose was present.

Father filed a petition to establish the parentage of the child and to set visitation on April 8, 2019 in the Rutherford County Chancery Court.[1] On June 18, 2019, the parties entered into an agreed order establishing Father as the legal parent of the child and directing Father to undergo a mental examination pursuant to Rule 35 of the Tennessee Rules of Civil Procedure. This order further provided that Father would not be required to pay child support until the completion of the examination, nor would he be permitted visitation. Mediation later proved unsuccessful.

Trial on the petition occurred over three days in the summer of 2020. Both Mother and Father submitted a proposed parenting plan. Mother's plan allotted Father only supervised visits starting at two hours every other week, gradually increasing to unsupervised parenting time every other weekend over the course of approximately twenty-four weeks. Father's plan gave the parties equal parenting time with no gradual build-up.

The testimony of Mother, Father, and Dr. David C. Mathis, the licensed psychologist who performed Father's mental examination, made up the bulk of the proof.[2] Father testified that Mother placed unreasonable restrictions on his parenting time following the above-described incident. Mother agreed that she prevented Father from having unsupervised parenting time with the child after this incident. As to this incident, Mother claimed that Father was parenting the child, but called her at work to inform her that the child would not "shut the f**k up, and I'm not dealing with it anymore." According to Mother, she denied Father's request for unsupervised time after this incident because she was afraid that Father would lose his temper with the child. After this incident, Father was able to exercise some supervised visitation with the child for a time upon his request. Mother never allowed Father to see the child unsupervised, although he did request it periodically.

Father claimed, however, that Mother's decision to impose restrictions on his visitation was about control. One example was undisputed by Mother: on Father's Day weekend 2017, Mother "offered" to allow Father to see the child. But Father asked Mother if he could pick the child up from daycare and keep her for the entire weekend, as his son from a prior relationship would also be home. According to Father, he and Mother had previously discussed a gradual increase in his visitation. In order to prevent Father from picking up the child, Mother left work, picked the child up from daycare, and then kept her

---

[1] Under Tennessee Code Annotated section 36-2-307, Father's petition could have been filed in "juvenile court or any trial court with general jurisdiction[.]"

[2] Father also called his current girlfriend, while Mother called a former friend of Father's, discussed *infra*. The trial court denied Mother's request to allow one witness, Father's older child's mother, to testify through electronic means.

home the rest of the day. Mother then denied Father any visitation on Father's Day.

Father's supervised visitation continued until April 2018, when the parties had an argument over an issue unrelated to parenting. According to Father, Mother stopped visitation at that point and "blocked him." In retaliation, he stopped paying child support, which he never resumed.[3] Father was eventually able to contact Mother via email; his emails often dealt with the parties' relationship rather than visitation with the child. By August 2018, however, Father was no longer asking Mother for visitation of any kind.

Mother claimed that Father was both emotionally and physically abusive during the parties' relationship. As for the physical abuse, Mother testified that during an argument, Father "charged" her, threw a phone, "butted up against" her, slapped a water bottle out of her hand, and "kick[ed] at [her] feet." During another incident, Mother testified that Father "smacked [her] across the face" with a couch cushion because he did not have access to Mother's cell phone. Mother admitted that she never sought any criminal charges against Father for these alleged actions, nor did she seek an order of protection against him.

Mother also claimed that Father was emotionally abusive toward her and other women, which both Father and his current live-in girlfriend denied. Mother recounted that Father claimed that a past girlfriend with whom he had a child had committed suicide after their child died. But the woman who was the subject of the lie, who was very much alive, testified that she had never been in a romantic relationship with Father. This woman further testified that she is fearful of Father knowing her whereabouts, as he persisted in attempting to contact her after she cut off communication with him. Father denied having fabricated this story, but Mother submitted text messages in which he appears to admit that he "lie[d] about it."

Mother also submitted text messages in which Father claimed to have a sexually transmitted disease and directed Mother to get testing as well; Mother later believed that Father's statement was not true. Father denied lying about the disease. Mother submitted many other text messages in which Father contacted Mother to renew their sexual relationship without asking about their child.[4] In one text message, Father claimed that if Mother sent him a nude photo, he would "up child support." Mother often did not engage with Father when he made these requests. In another text message, Father admitted that he has "manipulated, lied, tricked, and played games with you." Mother also submitted emails from Father in which he called her derogatory names and explained that he had stopped paying child support because Mother "wanted to be a b***h[;] . . . . go f**k yourself f*****g money grubbing b***h." Mother admitted, however, that on one occasion, she

---

[3] As previously discussed, while this case was pending, the parties agreed that Father would not pay child support.

[4] Father does ask about the child in other text messages, particularly in a string of texts beginning on February 10, 2018. Other text messages lack clear dates.

used the possibility of renewing the parties' sexual relationship as a way to manipulate Father.

Father underwent the agreed-upon Rule 35 examination in the summer of 2019. Based on his testing, conversations with Father, information submitted by Mother, and conservations with individuals who knew Father, Dr. Mathis concluded in his report that Father "has acted towards women in ways which are manipulative, deceptive, harassing and abusive. His past behavior has raised questions regarding his emotional functioning." This caused Dr. Mathis to question whether Father's "actions represent continued concern about his treatment of others[.]" Dr. Mathis stated that in the past Father

> would pursue his needs through various means of deception and manipulation. When confronted by his inappropriate behavior, [Father] often engaged in various forms of deflection and blaming rather than taking responsibility or making amends. These tactics fit with his negative view of women (harbored distrust and anger towards his mother) as well as his need to protect himself from confronting his own diminished view of himself.

Based on his examination, Dr. Mathis diagnosed Father with a personality disorder, unspecified. In explaining this diagnosis, Dr. Mathis testified that he "chose unspecified because we see three different dimensions represented; avoidant personality disorder, narcissistic personality disorder, and antisocial." And according to Dr. Mathis, it is important to remember that Father suffers from a disorder:

> The important thing is, we're not talking about just personality features or tendencies, but I made the determination that it's disorder. And disorder is very important in making determinations about how an individual is going to conduct themselves. Because a personality disorder tends not to benefit from experience and from guidance. And so they're going to repeat the same pattern in an inflexible and enduring way.

In conclusion, Dr. Mathis opined as follows in his report:

> I emphasized the importance of continuing psychotherapy which he had started with Dr. Joan Frye, Licensed Psychologist. I believe that he will need long-term psychotherapy that can help him process past traumas and alter the dysfunctional views of himself and relationships. It is my hope that [Father] can successfully establish a therapeutic relationship and will sustain his involvement. With appropriate guidance, [Father] has the potential to develop healthy feelings about himself and healthy beliefs to instruct how he relates to others. Such improvement in his emotional health and the range of appropriate skills would greatly enhance the possibilities of being a conscientious, secure parent as well as a cooperative co-parent.

Dr. Mathis declined, however, during his testimony to give an opinion as to the resolution of this custody dispute, noting that he had not been retained for that purpose.

The trial court made a detailed oral ruling on August 12, 2020, which was eventually memorialized by Mother into a written order filed on February 22, 2021. Therein, the trial court denied Mother's request to restrict Father's parenting time under Tennessee Code Annotated section 36-6-406. Instead, the trial court ruled that the parties should enjoy equal parenting time, which schedule was to be implemented on a gradual basis.[5] Mother filed a motion to alter or amend, in which she specifically raised the fact that the trial court made no findings as to whether Father had physically or emotionally abused Mother;[6] the trial court denied the motion to alter or amend in its entirety. Mother thereafter appealed.[7]

## II. ISSUES PRESENTED

Mother raises three issues, which are taken from her brief and slightly restated:

1. Whether the trial court erred by awarding a shared parenting schedule and not limiting Father's time with the minor child as dictated in Tennessee Code Annotated section 36-6-406, when there was clear evidence Father had willfully abandoned and had not assumed parenting responsibilities for a protracted period of time.

---

[5] The gradual plan increased Father's visitation to equal time over a period of approximately ten weeks.

[6] This portion of Mother's motion is likely best described as a motion for additional findings under Rule 52.02 of the Tennessee Rules of Civil Procedure, which governs motions asking the court to amend or make findings of fact. *See* **Pickard v. Ferrell**, 325 S.W.2d 288, 292–93 (Tenn. Ct. App. 1959) (noting that motions should be judged by their content, rather than their caption).

[7] In its final order, the trial court awarded Mother attorney's fees expended in connection with her effort to secure child support. The trial court directed Mother's counsel to calculate the time and noted that this amount "shall be awarded as a judgment against Father." No further orders contained in the record award Mother a specific amount in attorney's fees. Generally, the failure to finalize an award of attorney's fees renders an order non-final for purposes of this Court's subject matter jurisdiction. *See, e.g.,* **City of Jackson v. Hersh**, No. W2008-02360-COA-R3-CV, 2009 WL 2601380, at *4 (Tenn. Ct. App. Aug. 25, 2009) ("This Court has concluded on several occasions that an order that fails to address an outstanding request for attorney's fees is not final."); **Scott v. Noland Co.**, No. 03A01-9407-CV-00248, 1995 WL 11177, at *1 (Tenn. Ct. App. Jan. 12, 1995) ("Since there is no order in the record before us finally disposing of the Plaintiffs' claim for attorney fees at the trial level, the 'Final Judgment' from which this appeal is being pursued is not a final order and hence not appealable as of right under Tenn. R. App. P. 3(a)." (footnote omitted)). In this case, neither party appears to contest the award of attorney's fees. Because this case involves the stability of a minor child, we exercise our discretion to consider this appeal notwithstanding the apparent failure to finally resolve the issue of attorney's fees. *See* **Bayberry Assocs. v. Jones**, 783 S.W.2d 553, 559 (Tenn. 1990) (holding that the finality requirement of Rule 3(a) of the Tennessee Rules of Appellate Procedure could be waived under Rule 2) (citing Tenn. R. App. P. 2 (allowing the suspension of our appellate procedure rules for good cause, except as to certain rules not applicable here)).

2. Whether the trial court erred by awarding a shared parenting schedule and not limiting Father's time with the minor child as provided in Tennessee Code Annotated section 36-6-406, when a history of domestic abuse and discord was demonstrated by Father against Mother.

3. Whether the trial court erred by refusing to allow an unavailable witness to testify by electronic means which would have demonstrated further abuse suffered by Mother at the hands of Father and discounted Father's assertions of an agreeable relationship with his other child's mother.

### III. ANALYSIS

### A.

The central issue in this case is the trial court's imposition of an equal parenting schedule. "While a trial court has broad discretion in fashioning a parenting plan, the touchstone is the best interest of the child." *Smallbone v. Smallbone*, No. M2020-01556-COA-R3-CV, 2022 WL 1405655, at *4 (Tenn. Ct. App. May 4, 2022) (citing Tenn. Code Ann. § 36-6-106(a) (2017); *Maupin v. Maupin*, 420 S.W.3d 761, 770 (Tenn. Ct. App. 2013)). While a trial court's determination of whether a parenting plan serves a child's best interest is a finding of fact, *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013), "determining the details of parenting plans is 'peculiarly within the broad discretion of the trial judge.'" *Id.* at 693 (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)). As a result,

> "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

*Armbrister*, 414 S.W.3d at 693.

Generally, a parenting plan should allow each parent maximum participation in the life of the child consistent with "the location of the residences of the parents, the child's need for stability," and the non-exclusive best interest factors contained in section

36-6-106(a)(1)–(15).[8] Tenn. Code Ann. § 36-6-106(a). This provision does not, however, "mandate that the trial court establish a parenting schedule that provides equal parenting time[.]" **Gooding v. Gooding**, 477 S.W.3d 774, 784 n.7 (Tenn. Ct. App. 2015). Instead, "[t]he plain language of [s]ection 36-6-106(a) directs courts to order custody arrangements that allow each parent to enjoy the maximum possible participation in the child's life only to the extent that doing so is consistent with the child's best interests." **Flynn v. Stephenson**, No. E2019-00095-COA-R3-JV, 2019 WL 4072105, at *7 (Tenn. Ct. App. Aug. 29, 2019) (quoting **In re Cannon H.**, No. W2015-01947-COA-R3-JV, 2016 WL 5819218, at *6 (Tenn. Ct. App. Oct. 5, 2016)).

Tennessee Code Annotated section 36-6-406 provides one mechanism for limiting a parent's time with his or her child. At the time that Father filed his petition, section 36-6-406(a) provided as follows:

> The permanent parenting plan and the mechanism for approval of the permanent parenting plan shall not utilize dispute resolution, and a parent's residential time as provided in the permanent parenting plan or temporary parenting plan shall be limited if it is determined by the court, based upon a prior order or other reliable evidence, that a parent has engaged in any of the following conduct:
>
> (1) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting responsibilities; or
> (2) Physical or sexual abuse or a pattern of emotional abuse of the parent, child or of another person living with that child as defined in § 36-3-601.

The statute further provided that "[a] parent's involvement or conduct may have an adverse effect on the child's best interest, and the court may preclude or limit any provisions of a parenting plan, if any of the following limiting factors are found to exist after a hearing[,]" including the "abusive use of conflict by the parent that creates the danger of damage to the child's psychological development[.]" Tenn. Code Ann. § 36-6-406(d) & (d)(5).

By the time of the trial court's oral ruling, however, the initial paragraph of this statute had been amended to also include an express reference to the child's best interest. In particular, subsection (a), as amended, now provides as follows:

> The permanent parenting plan and the mechanism for approval of the permanent parenting plan shall not utilize dispute resolution, and a parent's

---

[8] The best interest factors changed slightly during the pendency of this appeal to include a new factor (16): "[w]hether a parent has failed to pay court-ordered child support for a period of three (3) years or more[.]" *See* 2022 Tenn. Laws Pub. Ch. 671 (H.B. 1866), eff. March 18, 2022. Neither the trial court nor the parties have asserted that this new factor has any application to this case.

residential time as provided in the permanent parenting plan or temporary parenting plan shall be limited *if the limitation is found to be in the best interest of the minor child* and if the court determines, based upon a prior order or other reliable evidence, that a parent has engaged in any of the following conduct: [including the same provisions as set forth above].

Tenn. Code Ann. § 36-6-406(a) (2020); *see also* 2020 Tenn. Laws Pub. Ch. 693 (S.B. 2733), eff. June 11, 2020 (emphasis added) (enacting this amendment). Here, the trial court's oral ruling makes clear that he was applying the newly amended version of section 36-6-406 to this cause of action. Although Mother cites the earlier version of the statute in her brief, she makes no argument that reference to the amended statute was in error.

Still, based on the Tennessee Constitution, "statutes are presumed to operate prospectively unless the legislature clearly indicates otherwise." ***In re D.A.H.***, 142 S.W.3d 267, 273 (Tenn. 2004) (citing ***Nutt v. Champion Int'l Corp.***, 980 S.W.2d 365, 368 (Tenn. 1998)). The Tennessee Supreme Court has noted, however, that statutes may be applied retrospectively when they are merely procedural or remedial:

> Statutes deemed remedial or procedural apply retrospectively to causes of action arising before such acts became law and to suits pending when the legislation took effect.
> A procedural or remedial statute is one that does not affect the vested rights or liabilities of the parties. A procedural statute is one that addresses the mode or proceeding by which a legal right is enforced. Remedial statutes are defined as "legislation providing means or method whereby causes of action may be effectuated, wrongs redressed and relief obtained. . . ."

***Id.*** (quoting ***State Dep't of Human Servs. v. Defriece***, 937 S.W.2d 954, 958 (Tenn. Ct. App. 1996)). One type of remedial law is "passed to correct or modify an existing law[.]" *Black's Law Dictionary* 1407 (9th ed. 2009). But even a procedural or remedial law cannot be applied retrospectively if it impairs a vested right. ***Doe v. Sundquist***, 2 S.W.3d 919, 923–24 (Tenn. 1999).

We conclude that the change to section 36-6-406 merely recognizes and clarifies the long-held principle that all questions concerning the welfare of children are addressed to the child's best interest. *See, e.g.*, Tenn. Code Ann. § 36-6-106(a) (stating that custody determinations "shall be made on the basis of the best interest of the child"); Tenn. Code Ann. § 36-6-401 ("In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities."); ***Kelly v. Kelly***, 445 S.W.3d 685, 696 (Tenn. 2014) ("The overarching 'standard by which courts determine and allocate the parties' parental responsibilities' after divorce is the 'best interests of the child.'") (quoting Tenn. Code Ann. § 36-6-401(a); citing ***Luke v. Luke***, 651 S.W.2d 219, 221 (Tenn. 1983) (observing

that "the welfare of the child has always been the paramount consideration" for determining child custody and visitation); *Holloway v. Bradley,* 190 Tenn. 565, 571, 230 S.W.2d 1003, 1006 (Tenn. 1950) ("The supreme rule to which all others should yield is the welfare and best interest of the child.")). As a result, even without the express invocation of the best interest standard in section 36-6-406(a), the trial court would have been required to consider the child's best interests under the framework that existed prior to the amendment. Given this fact and Mother's choice not to claim error in the trial court's citation of the amended statute, we conclude that the statute should be treated as merely remedial in this case. As such, there is no error in the trial court's reliance on the 2020 amendment to section 36-6-406(a).

We therefore return to Mother's argument concerning section 36-6-406(a). We begin with subsection (1), which provides that a parent's time "shall be limited" if the parent has committed "[w]illful abandonment that continues for an extended period of time or substantial refusal to perform parenting responsibilities[.]" Tenn. Code Ann. § 36-6-406(a)(1). The trial court specifically found that Mother had not proven that that Father had willfully abandoned the child as required under this subsection. Mother asserts that this was error, citing Father's failure to exercise visitation with the child for more than a year before he filed his petition. Father asserts that this issue was not raised before the trial court and should be waived. Respectfully, we disagree. Here, in opening arguments before the trial court, Mother's counsel clearly raised the issue of abandonment under section 36-6-406(a)(1). Father has not pointed out where he objected to this issue being raised at trial. The trial court's oral ruling does suggest that this issue was not adequately "pursued or submitted on behalf of Mother to be the factor that is to be at issue." But the trial court nevertheless ruled on the issue of abandonment. So we conclude that Mother's argument as to this subsection does not succumb to waiver.

But we cannot conclude that the evidence preponderates against the trial court's finding that Mother failed to show abandonment under the statute. To be sure, the trial court's written order contains little analysis to support the denial of limitations under this subsection. But the trial court's oral ruling contains additional reasoning. This dichotomy illustrates one of the initial difficulties with this case: the trial court's written order contains far less detail than its oral ruling.

Under Rule 52.01 of the Tennessee Rules of Civil Procedure, in bench trials, trial courts are required to make findings of fact and conclusions of law to support their rulings. This means that the findings of fact and conclusions of law must be contained or incorporated into the trial court's written order, as the court speaks through its orders and not through the transcript of the proceedings. *In re Navada N.*, 498 S.W.3d 579, 594 (Tenn. Ct. App. 2016) (citing *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015)). When the trial court fails to comply with Rule 52.01, the appropriate remedy is generally to vacate the trial court's judgment and remand the case to the trial court for written findings of fact and conclusions of law. *State ex rel. Schrita O. v. Robert T.*, No. W2017-00073-COA-R3-

JV, 2017 WL 5501345, at *4 (Tenn. Ct. App. Nov. 16, 2017). We may exercise our discretion, however, to "soldier on" with our review when the case involves only a clear legal issue or when the trial court's decision is "readily ascertainable." *Hanson v. J.C. Hobbs Co.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012). We have previously held that a trial court's reasoning was readily ascertainable when both the written order and transcript were considered in tandem. *See Mabie v. Mabie*, No. W2015-01699-COA-R3-CV, 2017 WL 77105, at *3 (Tenn. Ct. App. Jan. 9, 2017) ("Nevertheless, because the trial court's reasoning is evident to some extent from its oral and written rulings . . . , we choose to exercise our discretion and proceed to consider the merits of the alimony award."). *But see In re Navada N.*, 498 S.W.3d at 594 (declining to "parse the record" in search of support for the trial court's ruling).

This case contains a separately bound transcript setting forth the trial court's nearly 100-page oral ruling. In comparison, the written order is eleven pages long. And it appears that the party that takes issue with the trial court's written order—Mother—is actually the party that drafted the written order in this case.[9] So it makes little sense to allow Mother to capitalize on the differences between the oral ruling and the written order when she herself was the drafter of the written order. Under these unique circumstances, we conclude that both the trial court's written and oral rulings should be considered in this appeal. But as our analysis later makes clear, even this action does not cure all of the deficiencies with the trial court's ruling.

Returning to the issue of abandonment, the trial court's oral ruling provides as follows:

> One could say that the father not being in this child's life and not having availed himself earlier, much earlier that he sought, could arguably be some type of abandonment, or his failure to pay child support, a substantial refusal to perform parenting responsibilities. But as I've already found, there's an agreed order where the parties agreed not to set visitation and not to set child support after it had voluntarily been paid and there had been some voluntarily limited visitation. But I don't find this factor to have been proven.

Thus, the trial court concluded that at least some of Father's failure to be involved in the child's life was with Mother's consent. And elsewhere the trial court found that Mother had "done nothing" to facilitate the relationship between Father and the child, despite Father's requests early on. In a different context, this Court has held that abandonment is not willful if another party's behavior "amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the

---

[9] There was a lengthy delay between the oral ruling and the written order. The record does not indicate the reason for this delay.

child."[10] **In re M.L.P.**, No. W2007-01278-COA-R3-PT, 2008 WL 933086, at *10 (Tenn. Ct. App. Apr. 8, 2008) (involving termination of parental rights). Here, Mother imposed significant restrictions on Father's ability to parent the child and took action to prevent him from developing any relationship with the child. Under these circumstances, we cannot say that the evidence preponderates against the trial court's finding that Mother failed to prove abandonment under section 36-6-406(a)(1).

Mother also argues that the trial court abused its discretion in not limiting Father's parenting time under subsection (d)(5) where it was shown that Father engaged in "[t]he abusive use of conflict [] that creates the danger of damage to the child's psychological development[.]" The trial court's written ruling does not address this subsection in any fashion. The trial court's oral ruling does address this issue, however, stating: "Both parties gave and took in this case. Each were capable of saying derogatory remarks to the other, and the text messages that were introduced into evidence . . . confirms such conclusion." Beyond citing the statute, Mother's brief contains no argument to undermine the trial court's findings as to this subsection. As such, we conclude that Mother has not met her burden to show that the trial court's determination as to this issue was in error.

We finally turn to the portion of the statute that makes up the bulk of Mother's argument in this case—section 36-6-406(a)(2). Under the amended version of this subsection, a parent's time with a child shall be limited, consistent with the child's best interest, if the parent has engaged in "[p]hysical or sexual abuse or a pattern of emotional abuse of the parent, child or of another person living with that child as defined in § 36-3-601." Tenn. Code Ann. § 36-6-406(a)(2). The trial court specifically found that there had been no allegations of abuse to the child or any kind of sexual abuse. Rather, the only question was whether there had been physical abuse or a pattern of emotional abuse of Mother such that it was in the child's best interests for Father's parenting time to be limited.

Mother takes issue with the fact that the trial court did not resolve the ultimate question of whether Father had actually engaged in physical or emotional abuse of Mother. We agree. Here, Mother raised allegations that Father was both physically and emotionally abusive toward her during their relationship and thereafter. In its written order, the trial court noted that Mother asked for Father's parenting time to be limited under section 36-6-406 and noted that it had considered various authorities regarding "Father's alleged emotional abuse against her." Ultimately, however, the trial court concluded that while Mother would have grounds for divorce had this been a divorce case, "this is not a divorce case. It is a paternity action and an action to establish a parenting schedule." So the written

---

[10] Of course, "interference with a parent's attempts at visitation does not excuse the parent from his obligation to support the child financially." **In re M.L.D.**, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005). But Mother's brief does not contain any specific argument that Father's sporadic support should also be deemed willful abandonment under subsection (1). So we do not address that aspect of subsection (1).

order then considers the best interest factors under Tennessee Code Annotated section 36-6-106(a). Most of the factors favored Mother.[11] The trial court did not, however,

[11] At the time Father filed his petition and the trial court ruled, the relevant factors were as follows:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make

specifically state whether factor (11), concerning abuse, favored either party; instead, the court stated that it would consider that factor in the context of Dr. Mathis's report.

The trial court's written order then details the findings of Dr. Mathis, including that Father "acted towards women in ways that are manipulative, deceptive, harassing, and abusive." Moreover, the trial court noted that Dr. Mathis diagnosed Father with both a personality disorder, with features of avoidant narcissism and antisocial personality, as well as an anxiety disorder. But the trial court also noted that the only recommendation provided by Dr. Mathis was that Father engage in long term psychotherapy, which could help Father "develop healthy feelings towards himself and others." Because there was "no proof to indicate Father has failed to continue his psychotherapy," the trial court found that Father was doing exactly what Dr. Mathis recommended. As a result, the trial court found "no basis at this stage to have Father's visitation supervised. There is nothing to indicate he will be a threat or harm to the child." But the trial court does not return to factor (12) to resolve the question of whether Father physically abused Mother or engaged in a pattern of emotional abuse against her.

Thus, the written order entered here does not resolve a central question posed by Mother's arguments. And even considering the trial court's oral ruling, we can locate no express finding as to whether any of the abuse that Mother alleged occurred. Indeed, even taking the trial court's oral findings as a whole, we find no further illumination from which we might glean whether the trial court found that such abuse was actually proven in this case. For example, while the trial court does indeed cite some caselaw involving this issue, the bulk of the caselaw involved the question of whether Rule 35 examinations could be ordered in similar cases. Of course, this caselaw was largely irrelevant at this juncture, as Father voluntarily agreed to undergo the examination. Moreover, the trial court made no effort to apply the holdings of any of the few cases he cited involving section 36-6-406 to the facts of this case or to explain their relevance.

Moreover, while the trial court recounted much of the documentary proof submitted by Mother in support of her claim of emotional abuse, the trial court made little mention of Mother's allegations of physical violence. Indeed, when the trial court did mention Mother's allegations of physical violence, it was to mischaracterize her testimony. Here, Mother clearly testified that Father hit her in the face with a couch cushion during an argument; the trial court's oral ruling states that its recollection of Mother's testimony was only that Father "threw it in her direction."

To be sure, even taking Mother's testimony as to the physical violence as true, it

accommodations consistent with those schedules; and
(15) Any other factors deemed relevant by the court.

The trial court found that factors (1), (2), (4), (5), and (6) favored Mother, while factors (3), (7), (8), (9), (10), (12), (13), (14), and (15) to be equal or inapplicable.

certainly was not as pervasive as Father's alleged emotional abuse. But Mother did make allegations that Father had been violent toward her, which Father denied. Thus, the question of whether Father engaged in physical abuse hinges on the credibility of the parties. Trial courts are the courts "best situated to determine the credibility of the witnesses and to resolve factual disputes hinging on credibility determinations." *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998) (citing *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990)). Consequently, the question of whether Father physically abused Mother is simply not a question that we can answer in this appeal absent appropriate findings by the trial court.

The same is generally true of Mother's emotional abuse allegations. Certainly, the trial court recounted much of the evidence presented in support of Mother's claim of emotional abuse. The trial court also recounted the findings of Dr. Mathis in his expert opinion. But recounting the proof presented is not the same as making the findings of fact required to adjudicate an issue. *Cf. Rosebrough v. Caldwell*, No. W2018-01168-COA-R3-CV, 2019 WL 6898218, at*4 (Tenn. Ct. App. Dec. 18, 2019) (quoting *In re S.S.-G.*, No. M2015-00055-COA-R3-PT, 2015 WL 7259499, at *12 (Tenn. Ct. App. Nov. 16, 2015) ("'[A] lengthy summary of the testimony adduced at the hearing and a few credibility observations' without further indicating which testimony or other evidence the trial court relied upon in making its decision is not sufficient to satisfy the requirement of making specific findings of fact.")). Without these findings, we are left to guess whether the trial court considered Father's conduct to amount to abuse. *See In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009) (recognizing that without findings and conclusions appellate courts are left to wonder about the basis of a trial court's decision). And even if the trial court did not believe that Father's conduct, however characterized, was sufficient to impose the highly restrictive parenting plan that Mother favored, the trial court's order provides little illumination as to why an equal parenting plan was in the child's best interest in this case. This is especially true here given (1) that no best interest factors favored Father alone; (2) the proof showed that the parties have animosity toward each other;[12] and (3) Dr. Mathis's expert proof indicated that Father has hostility toward women and a personality disorder that will be difficult to ameliorate.[13]

Rather, from our review, the trial court's conclusion that equal parenting was appropriate appears to focus nearly exclusively on whether Father was abusive to the child. Certainly, that is a highly relevant consideration. But both Tennessee Code Annotated sections 36-6-106(a)(12) and 36-6-406(a)(2) make clear that abuse of a parent is also a

---

[12] *See* footnote 14, *infra*.

[13] Certainly, the fact-finder is free to discount or disregard the opinions of the experts before it. *Forrest Const. Co. v. Laughlin*, 337 S.W.3d 211, 233 (Tenn. Ct. App. 2009) (citing *Davis v. Sliney*, 1988 WL 75331, at *5 (Tenn. Ct. App. July 21, 1988) ("The trial judge, as the trier of fact, is not compelled to unequivocally accept expert opinions.")). Here it is clear that the trial court credited Dr. Mathis's opinion that Father could be helped through long-term psychotherapy. The trial court's order provides no further illumination as to what other portions of the expert's opinion the trial court credited or discounted.

relevant consideration. These statutes therefore direct the court to consider not only the likelihood of abuse that could be suffered by the child, but also the interactions that an abused parent must have with his or her abuser. Indeed, section 36-6-406(a) provides that in addition to limitations on parenting time, when the circumstances detailed thereunder are present, no dispute resolution shall be ordered under the parenting plan. Tenn. Code Ann. § 36-6-406(a). This provision appears directed at protecting an abused parent from unnecessary interaction with the abusive parent, rather than simply protecting the child from abuse. So section 36-6-406(a) makes clear that the abuse of the parent is relevant even without allegations that the child was also a victim. And while the trial court did give lip service to considering Mother's allegations of emotional abuse, respectfully, the trial court avoided answering the question presented by Mother's proof.

We certainly agree that not all conduct that may be considered under section 36-6-406 will justify limitations on a parent's time with a child, given that the question must ultimately be based on the child's best interest. Indeed, we have previously rejected such an argument:

> Mother would like us to read Tenn. Code Ann. § 36-6-406 as absolutely barring any parent from being named as the primary residential parent of a child if that parent has any history of abuse, no matter the degree of abuse involved or its remoteness in time. Both the legislature and the courts take domestic abuse very seriously, as they should. We do not believe, however, that the legislature intended the statute to be applied so broadly as to deprive the trial court of its discretion to make custody determinations in accordance with the best interest of the children, based upon the factual situation that exists at the time of that determination.

*O'Rourke v. O'Rourke*, No. M2007-01833-COA-R3-CV, 2010 WL 4629035, at *15 (Tenn. Ct. App. Nov. 10, 2010). So we agree with the trial court that allegations of abuse must be viewed at all times through the lens of the child's best interest.

Still, the trial court has a "high" duty to adjudicate and resolve the disputes put before it. *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 312 (Tenn. 2014) ("The essential purposes of courts and judges are to afford litigants a public forum to air their disputes, and to adjudicate and resolve the disputes between the contending parties. To carry out these purposes, judges must arrive at their decisions by applying the relevant law to the facts of the case." (citations omitted)). The trial court is therefore required to "explain why a particular result is correct based on the applicable legal principles[.]" *Id.* at 313. To fulfill this duty, the court's order must contain "sufficiently specific findings on the disputed facts that [a]re crucial to determining [the questions at issue]." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013).

Here, whether Father committed both physical and emotional abuse against Mother

was a central issue in this case, which the trial court did not resolve. In a somewhat similar situation, we have held that a trial court's order was insufficient when it "made virtually no findings of fact regarding the abuse allegations[.]" ***Mangum v. Mangum***, No. E2018-00024-COA-R3-CV, 2019 WL 1787328, at \*14 (Tenn. Ct. App. Apr. 24, 2019) (where the trial court also failed to consider most of the best interest factors). In that case, we held that remand for the trial court to address this issue was the appropriate remedy. ***Id.*** Although the trial court here certainly went further than the court in ***Mangum***, the trial court's order is still virtually devoid of findings as to whether abuse *of Mother* occurred. In the absence of findings on the central question to this case, like the panel in ***Mangum***, we cannot conduct appropriate appellate review. Because we are unable to "solider on" with our review in the absence of findings as to these central issues, ***Hanson***, 2012 WL 5873582, at \*10, the trial court's order must be vacated and remanded for the trial court to resolve these outstanding factual questions and to enter a parenting plan that takes into account those findings as required by section 36-6-406(a).[14]

We note, however, that "[e]vents and lives have not stood still while this custody dispute has been in the courts." ***Wall v. Wall***, No. W2010-01069-COA-R3-CV, 2011 WL 2732269, at \*26 (Tenn. Ct. App. July 14, 2011) (quoting ***Gorski v. Ragains***, No. 01A01-9710-GS-00597, 1999 WL 511451, at \*4 (Tenn. Ct. App. July 21, 1999)). Accordingly,

> when a trial court is directed to reconsider an issue on remand that involves the circumstances of children and their parents, the trial court should endeavor to ascertain and give effect to the parties' actual circumstances, which will necessarily change over the course of time, e.g., people remarry, have more children, insurance premiums rise and fall, and child care needs change. Accordingly, the trial court may, in its discretion, consider such additional evidence to insure that any custody order is based on the parties' actual circumstances.

***Kathryne B.F. v. Michael B.***, No. W2013-01757-COA-R3-CV, 2014 WL 992110, at \*7 (Tenn. Ct. App. Mar. 13, 2014) (internal citations and quotation marks omitted) (quoting ***In re C.W.***, 420 S.W.3d 13, 22 (Tenn. Ct. App. 2013)).

## B.

Finally, Mother argues that the trial court erred in excluding a witness that wished to testify by electronic means. In support, Mother cites Tennessee Code Annotated section

---

[14] If upon remand the trial court once again chooses to impose an equal parenting schedule, additional findings as to why this particular arrangement was chosen may also facilitate future appellate relief, given the trial court's findings that not a single factor favors Father alone and that the parties were unable to set aside their negative feelings toward one another to parent the child. *See generally **Rajendran v. Rajendran***, No. M2019-00265-COA-R3-CV, 2020 WL 5551715, at \*8–10 (Tenn. Ct. App. Sept. 16, 2020) (discussing the need for cooperation inherent in an equal parenting plan).

36-6-214, which provides as follows:

> (a) In addition to other procedures available to a party, a party to a child custody proceeding may offer testimony of witnesses who are located in another state, including testimony of the parties and the child, by deposition or other means allowable in this state for testimony taken in another state. The court on its own motion may order that the testimony of a person be taken in another state and may prescribe the manner in which and the terms upon which the testimony is taken.
> (b) A court of this state may permit an individual residing in another state to be deposed or to testify by telephone, audiovisual means, or other electronic means before a designated court or at another location in that state. A court of this state shall cooperate with courts of other states in designating an appropriate location for the deposition or testimony.
> (c) Documentary evidence transmitted from another state to a court of this state by technological means that do not produce an original writing may not be excluded from evidence on an objection based on the means of transmission.

Mother further cites the COVID-19 pandemic that was ongoing at the time of trial, the Tennessee Supreme Court's Emergency Orders encouraging courts to conduct court through electronic means, and local rules.

The "decision whether to admit or exclude evidence lies within the discretion of the trial court." *In re Est. Of Schisler*, 316 S.W.3d 599, 606 (Tenn. Ct. App. 2009) (citing *Young v. Hartley,* 152 S.W.3d 490 (Tenn. Ct. App. 2004)). As Mother recognizes, the admission or exclusion of evidence is governed by the Tennessee Rules of Evidence. In particular, Rule 103(a) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." Thus, in the absence of a showing of plain error, the party appealing the exclusion of evidence must have made an offer of proof to the trial court. *See* Tenn. R. Evid. 103(d). When no offer of proof is made, the issue is waived unless an exception exists. *See, e.g.*, *Davis v. Hall*, 920 S.W.2d 213, 218 (Tenn. Ct. App. 1995) ("In the absence of an offer of proof and the inclusion of the testimony in the record, this Court cannot consider the alleged error."). Mother admitted at oral argument that she did not make an offer of proof as to the substance of the excluded testimony. Nor does she argue that any exception to the offer of proof mandate exists in this case.

"The purpose of an offer of proof is to preserve excluded evidence in a manner sufficient to allow appellate review of the trial court's decision to exclude the evidence." *State v. Lowe*, 552 S.W.3d 842, 864 (Tenn. 2018). "When a party contends that the trial

court erred in excluding testimony, the need for a description of that testimony is compelling. Absent such a showing, an appellate court cannot determine whether the exclusion was error, and if error is found, whether the error is harmless." ***Alley v. State***, 882 S.W.2d 810, 816 (Tenn. Crim. App. 1994). Here, in the absence of an offer of proof, we cannot determine whether the exclusion of this testimony "more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). Accordingly, we hold that Mother waived review regarding the exclusion of this evidence.

## IV. CONCLUSION

The judgment of the trial court is affirmed in part, vacated in part, and remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant, Frankie Michelle Krisle, and one-half to Appellee, Samuel Randall Friedsam, III, for all of which execution may issue if necessary.


s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE